Mershon and another vs. Moors and another.

Mershon and another, Respondents, vs. Moors and another, imp., Appellants.

*March 25 — April 8, 1890.*

*Debtor and creditor: Title for security: Garnishment: Conditional sale: Filing: Insolvency: Waiver.*

1. Where a commercial correspondent advances money for the purchase of property, and takes possession either actually or symbolically, he becomes the owner thereof, even when the advance was made and the property was purchased at the request and for the ultimate use and profit of another, and there was an agreement to transfer the title to that other upon the performance of certain conditions, and the ownership was taken solely for the protection of the party making the advance.

2. Goods were bought by an importer with funds obtained on a letter of credit given by bankers, who were to have a specific lien on the goods bought and the proceeds thereof. The bills of lading were indorsed by the importer to the bankers, who afterwards indorsed them back to the importer upon a written agreement by the latter to hold them for the bankers "in trust as their property . . . but with liberty to sell and deliver said merchandise to purchasers" on certain conditions as to price and time of payment, the proceeds of such sales to be delivered to the bankers until the acceptances by them under the letter of credit should be paid,— "the intention of this agreement being to protect and preserve unimpaired the lien of [the bankers] on said merchandise." Under such agreement the importer sold the goods on credit. The purchasers were garnished by his creditors. *Held*, that such sales were made by the importer as agent of the bankers, and that the proceeds thereof were the property of the latter and not subject to the garnishment.

3. If the agreement between the bankers and the importers was in the nature of a conditional sale to the latter, yet, being made outside of this state by nonresidents and before the property came to this state, and being valid where made, it will be held valid in this state as against the importer's creditors, though not filed in the manner provided by sec. 2317, R. S.

4. The bankers did not waive their right to the proceeds of the sales by proving their claim against the importer's estate in insolvency.

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiffs brought an action against Edwin S. Wheeler and another, constituting the firm of E. S. Wheeler & Co. of New Haven, Connecticut, upon an account, and garnished the John Pritzlaff Hardware Company and the William Frankfurth Hardware Company, of Milwaukee, Wisconsin. The former garnishee answered, admitting an indebtedness to E. S. Wheeler & Co. in the sum of $921.25 upon an account for merchandise consisting of tin plates sold to it by said firm; and the latter garnishee answered, admitting an indebtedness to E. S. Wheeler & Co. of $694.63 upon a like account; but each alleged that J. B. Moors & Co., bankers of Boston, Massachusetts, and S. E. Merwin of New Haven, Connecticut, as Wheeler & Co.'s trustee in insolvency proceedings in Connecticut, claimed to be entitled to such indebtedness, setting forth the nature of such claims. Thereupon Moors & Co. and S. E. Merwin, as trustee of E. S. Wheeler & Co., were interpleaded as defendants in the garnishee action, and appeared and answered, after which the garnishees paid the money into court.

Merwin claimed the indebtedness as trustee appointed under proceedings had in a voluntary assignment made by E. S. Wheeler, under the name of E. S. Wheeler & Co., for the benefit of his creditors under the laws of Connecticut, but at the trial, pursuant to a stipulation between him and plaintiff, waived all claim to the fund in court, and withdrew his answer.

The facts upon which Moors & Co. based their claim to the fund are stated in the opinion.

The trial resulted in a judgment in favor of the plaintiffs, the trial court holding that the indebtedness of the garnishees was the property of E. S. Wheeler in his own right, and was under no lien in favor of Moors & Co., and was

subject to garnishment at the suit of the plaintiffs in this action. From that judgment Moors & Co. appeal.

For the appellants there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *F. C. Winkler*. They argued, among other things, that Moors & Co. were the owners of the property at the time of its sale to the garnishees. The transfer of the bill of lading by E. S. Wheeler & Co. of Liverpool, the shippers, to Moors & Co., vested the title in the latter. Moors & Co. having induced Morton, Rose & Co. to accept the draft for them, and pledged their own credit for its payment, constituted a good and valid consideration for the transfer. It is well settled that a delivery for a valuable consideration of a bill of lading indorsed in blank passes to the person to whom it is delivered a good title to the goods. *Lickbarrow v. Mason*, 5 T. R. 683; *Haille v. Smith*, 1 B. & P. 563; *Thompson v. Dominy*, 14 M. & W. 403; *Smurthwaite v. Wilkins*, 11 C. B. (N. S.), 842; *The Freedom*, L. R. 3 P. C. 594; *The Helene*, B. & L. 415; *Saltus v. Everett*, 20 Wend. 272; *The Thames*, 14 Wall. 106; *Forbes v. B. & L. R. Co.* 133 Mass. 154. The relation of Moors & Co. to Wheeler in respect to the property in question was that of owners under a contract to sell the property to him when he should provide the money to pay the draft they were bound to honor. In other words, the transaction constituted a conditional sale. *Farmers' & M. Nat. Bank v. Logan*, 74 N. Y. 577, 578; *Moors v. Kidder*, 106 id. 40, 41, 43; *Jenkyns v. Brown*, 14 Q. B. 496; *Dows v. Nat. Ex. Bank*, 91 U. S. 631, 632. Under that sale Wheeler, as the vendee, would have no right to sell the property until he had paid for it. A sale before payment would constitute a conversion. *Sims v. James*, 62 Ga. 260. The delivery by Moors & Co. to Wheeler of the duplicate bill of lading, and the taking of the trust receipt or agreement, did not pass any title to

Wheeler. Such delivery was solely to enable Wheeler to get possession of the goods from the carrier. *Moors v. Wyman*, 146 Mass. 60, 63. The trust agreement gave Wheeler liberty to sell the property, but bound him to deliver the proceeds to Moors & Co. It gave him rights in respect to the property which he did not possess before. If he had furnished Moors & Co. with the money to pay the draft drawn for the purchase price of the property, he would, of course, have become the owner of the property under the conditional sale; but if he sold the property under the trust receipt before furnishing such money, he was bound to sell the same as agent or trustee for Moors & Co. *Moors v. Wyman*, 146 Mass. 62, 63; *New Haven Wire Co. Cases*, 57 Conn. 352. And having so sold the property on credit, Wheeler held the debt or chose in action as the agent or trustee of Moors & Co. If an agent or trustee rightfully or wrongfully change property intrusted to him into other property, equity will follow it through any number of transmutations and preserve it for the owner so long as it can be identified, no matter in whose name the legal right stands. *Farmers' & M. Nat. Bank v. King*, 57 Pa. St. 202; *Cooper v. White*, 19 Ga. 554–556; *Thompson v. White*, 45 Me. 445; *Fowler v. True*, 76 id. 45, 46; *Trecothick v. Austin*, 4 Mason, 29; *King v. Lawrence*, 14 Wis. 238–241.

If, therefore, the conditional sale was valid as against Wheeler's creditors, *Moors & Co.* are entitled to the fund in court. The transactions in question, so far as they affect Moors & Co. and Wheeler, were had in Massachusetts and Connecticut. The trust agreement, dated July 27, 1887, while the goods were in transit, was drawn in Boston and sent by mail to Wheeler at New Haven, and was there signed and sent by mail to Moors & Co. while the merchandise was in transit, and it is either a Connecticut contract or a Massachusetts contract, and is governed by the laws of one or the other of those states, and not by the

laws of Wisconsin. It is well settled in Connecticut that a conditional sale whereby the chattels are to be at once delivered to the buyer, while the title remains in the seller until they are paid for, is valid. *Forbes v. Marsh*, 15 Conn. 384; *Cooley v. Gillan*, 54 id. 80. Such a sale is valid in Massachusetts. *Coggill v. H. & N. H. R. Co.* 3 Gray, 545, 550; *Burbank v. Crooker*, 7 id. 158; *Zuchtman v. Roberts*, 109 Mass. 53; *Benner v. Puffer*, 114 id. 376, 378. The contract being valid by the law which governed it at the time of its making, the *lex loci contractus*, no subsequent removal of the property can affect it. The law of Wisconsin, to which state the goods were subsequently brought, requiring the filing of that sort of contracts, has no application. Herm. Chat. Mortg. 579, and cases cited. Nor does the contract come within the terms of sec. 2317, R. S., even if that section were otherwise applicable.

For the respondents there was a brief by *Shepard & Shepard*, attorneys, and *Thomas R. Shepard*, of counsel, and oral argument by *C. E. Shepard*. They contended, *inter alia:* 1. The claimants' final rights in the matter all rest upon the "trust receipt," the latest agreement of the defendants; and this receipt does not by its terms create or preserve any lien on the *proceeds* of the goods. 2. The claimants' lien on or title to the goods, and much more on or to the proceeds thereof, even if to be found in the terms of any agreement in the case, is void in respect of third parties, as against the policy of the law, except in Connecticut. *(a)* Not having the possession, their lien, if any, is equitable in its nature. Jones on Liens, secs. 3–5, 20–22. But an equitable lien does not exist unless the intention is to create a *lien upon the property*, as distinguished from a mere agreement to apply the proceeds of a sale of it to the payment of a debt. Jones on Liens, sec. 32; *Cook v. Black*, 54 Iowa, 693. And an equitable lien does not prevail against third parties without notice; it yields alike to the

rights of *bona fide* purchasers and *bona fide* attaching cred-
itors, unless the lienor takes and retains possession before
the rights of such third parties have intervened. Jones on
Liens, secs. 29, 30; *Green v. Van Buskirk*, 5 Wall. 307,
311-12; *S. C.* 7 id. 139, 147; *Hauselt v. Harrison*, 105 U. S.
401, 405. *(b)* As *cestui-que-trusts* the appellants cannot
claim the fund. They were at no time the *beneficial own-
ers* of the property, but at most were owners merely for
their security as lenders of the purchase money. Their
ultimate interest in the property was that of *creditors*, and
the trust, if any, was one in favor of a creditor. Being such
it must either be in the nature of an assignment for the
benefit of a creditor, or in the nature of a mortgage. As
an assignment it was void because not complying with the
statute (sec. 1694, R. S.). As a trust in the nature of a
mortgage it was void in respect of the plaintiffs because
not filed as a chattel mortgage as required by secs. 2313,
2314, R. S. It is true that some authorities hold that if the
mortgage is filed according to the law of the place where
the parties live and where the property is when the con-
tract is made, or, in other words, if it is valid by the *lex
situs* and the *lex contractus*, it will be recognized every-
where. But those authorities are limited to cases in which
the property is located where the contract is made. Jones
on Chat. Mortg. secs. 299, 305. And this property was
never in either Connecticut or Massachusetts. At the time
of the contract by trust receipt it was apparently at Mon-
treal in the province of Quebec. The *lex situs* was there-
fore the law of that province, and, there being no proof as
to what that law is, it will be presumed to be the same as
ours. If the case turns on Wisconsin law, either operating
*proprio vigore* on the property when the same came into
this state, or controlling the court as the sole index in the
record of the *lex situs* when the contract was made, then
(1) if our law of chattel mortgages and conditional sales is

applicable to chattels which are out of the state when a vendor's lien or conditional sale thereof arises, and are afterwards brought into the state and here attached, then the appellants lost their lien upon the arrival of the property here, and failure to file the trust receipt as constituting a conditional sale, reserving title to the vendor, with possession in the vendee. Sec. 2317, R. S. (2) If our law is not thus applicable it follows that, *as to such imported chattels,* Wisconsin has no statute for filing mortgages or other documentary liens. In such a state the common law, which held such liens invalid without continued possession by the lienor, will be enforced, though the liens were valid where the property came from and the parties who dealt in it lived. *De'op v. Windsor,* 26 La. Ann. 185; *McCabe v. Blymyre,* 9 Phila. 165; *Montgomery v. Wight,* 8 Mich. 143; *Boydson v. Goodrich,* 49 id. 65; *Rice v. Courtis,* 32 Vt. 460; *Martin v. Potter,* 34 id. 87. *(c)* If the appellants claim as *owners* and bailors of the property, such claim excludes any claim as *lienors.* Jones on Liens, secs. 10, 28. A creditor's title or "banker's title" — not for profit, but for security merely — often exists. The doctrine has been developed in futherance of the security of loans to assist commercial enterprise, that a banker or other person who advances money on the security of merchandise, taking possession of the same by bill of lading, warehouse receipt, or otherwise, thereby acquires a *property* in it, sufficient to give him control of its disposal and to enable him to sue at law for any interference with it in disregard of his rights. The debtor who, dealing in the commodity, has secured the advance, still remains in the eye of the law, as in the intention of the parties, the beneficial and responsible owner. It is merely that his power of disposition *(jus disponendi)* of the property is treated as transferred to the banker for the security of his advances — a more effective security than mere equitable lien. There is nothing to prevent the banker

from employing the debtor, equally with any other person, as his bailee for any purpose consistent with the retention of title in the banker, but he cannot commit to the debtor at once the possession of the goods *and the right to dispose of them in his own name,* without losing, as against third persons, his own title for security. *Bank of Rochester v. Jones,* 4 N. Y. 497; *Mechanics' & T. Bank v. Farmers' & M. Bank,* 60 id. 40; *First Nat. Bank v. Shaw,* 61 id. 283; *Marine Bank v. Fiske,* 71 id. 353; *Farmers' & M. Bank v. Logan,* 74 id. 568; *Hazard v. Fiske,* 83 id. 287; *Dows v. Kidder,* 84 id. 121; *De Wolf v. Gardner,* 12 Cush. 19; *Michigan S. Bank v. Gardner,* 15 Gray, 362; *Forbes v. B. & L. R. Co.* 133 Mass. 154; *Dows v. Nat. Ex. Bank,* 91 U. S. 618; *Moors v. Kidder,* 106 N. Y. 32; *Moors v. Wyman,* 146 Mass. 60; *Kellogg v. Thompson,* 142 id. 76, 79. *(d)* The claim of the appellants regarded as owners and conditional vendors is open to substantially the same objection. The trust receipt expressly gives to the vendee the *jus disponendi.* Thus it is not properly a contract of conditional sale at all, or at all events it makes a condition which the law will not uphold after the vendee has made a resale. As a contract of conditional sale the trust receipt will no more be given effect by the law (apart from our statutory prohibition) than it would as the reservation of an equitable lien, as a trust in the nature of a mortgage, or as a bailment. The law will disregard all such secret arrangements, not only when they would affect purchasers for value, but when they are asserted to defeat creditors who in good faith have attached assets of the apparent owner. *Green v. Van Buskirk,* 7 Wall. 139, 147; *Harkness v. Russell,* 118 U. S. 663, 678–9. 3. Even the law of Connecticut does not uphold the appellant's claim to the *proceeds* of the goods. *New Haven Wire Co. Cases,* 57 Conn. 352; *Lewis v. McCabe,* 49 Conn. 141. 4. But the law of Wisconsin, not that of Connecticut, rules the case. 2 Kent's Coinm. 461 *ad fin.* An

attaching creditor's rights prevail over those of one claiming title or interest in property by an instrument not valid in the state where the property is and the suit is brought, notwithstanding all the claimants may be domiciled elsewhere. *Green v. Van Buskirk*, 5 Wall. 311–12; *S. C.* 7 id. 150–51; *Fosdick v. Schall*, 99 U. S. 235.

COLE, C. J.   This is a contest between Moors & Co., of Boston, and the respondents, merchants of Chicago, for certain moneys garnished as the property of E. S. Wheeler & Co., of New Haven, Conn.   The moneys have been paid into court by the garnishees, and the question in the case is, Can Moors & Co. hold them, or are they liable to attachment and garnishee process by the creditors of Wheeler & Co.?   The facts upon which Moors & Co. claim the money are, in substance, these:

In May, 1887, Moors & Co., bankers, issued a letter of credit to E. S. Wheeler & Co. of Liverpool, England, authorizing them to draw upon Morton, Rose & Co., of London, for £10,000, for account of E. S. Wheeler & Co. of New Haven, Conn.   These drafts were to be for the invoice cost of merchandise to be shipped to Atlantic ports in the United States, and were to be accompanied by consular invoices and bills of lading to order, and indorsed to Moors & Co.   The latter were to pay, or provide for the payment of, these drafts thus drawn.   On the back of the letter of credit, E. S. Wheeler & Co. of New Haven executed an agreement by which they bound themselves to furnish Moors & Co. bankers' bills on London of the same amount, to meet these drafts, before maturity of the same, or pay the equivalent thereof in cash at current rates of exchange, and also agreed to pay certain specified commissions for the acceptances of Moors & Co.   They further pledged and gave Moors & Co. a specific claim and lien on all goods and merchandise, and the proceeds thereof, which

the latter might pay for under the arrangement by reason of the letter of credit, and also all the bills of lading and policies of insurance to an amount sufficient to cover all advances or engagements under such credit, with full power for Moors & Co. to take possession and dispose of the same for their security or reimbursement. The securities which Moors & Co. might receive were to be held by them as security for any other indebtedness or liability which might exist between the parties.

E. S. Wheeler & Co. was the name under which E. S. Wheeler did business in this country. He was also a member of the Liverpool firm to whom the letter of credit ran. In July, 1887, E. S. Wheeler & Co. of Liverpool, at the request of E. S. Wheeler of New Haven, shipped, by the steamer Sarmatian, 715 boxes of tin plates and 214 boxes of tin plates, taking separate bills of lading therefor, executed in triplicate, by which the carrier undertook to transport the first lot from Liverpool to Chicago, and the other lot from Liverpool to Milwaukee. Drafts were drawn for the invoice price of the goods shipped, and the bills of lading were indorsed: "Deliver to Moors & Co. or order." In July, 1887, E. S. Wheeler & Co. of New Haven requested Moors & Co., by telegraph, to send the documents for the Sarmatian shipments to the custom-house agent of the Grand Trunk Railway at Montreal. The goods were to be delivered by the steamer at the port of Montreal to the Grand Trunk Railway, to be forwarded by such company to their destination. Moors & Co. thereupon forwarded to the said customs agent a consular invoice and bill of lading for the 715 boxes of tin plates, and a consular invoice and bill of lading for the 214 boxes of tin plates, with instructions to forward the freight to Chicago and Milwaukee, as called for by the bills of lading, and by letter so informed E. S. Wheeler & Co. of New Haven, sending them at the same time a consular invoice and bill of

lading for the 715 boxes, and also a consular invoice and bill of lading for the 214 boxes, indorsing the bills: "Deliver to E. S. Wheeler & Co. or order." They at the same time sent by mail an instrument to E. S. Wheeler & Co. of New Haven relating to both lots of tin plates, which E. S. Wheeler & Co. signed at New Haven and returned to them. By the material part of this instrument, E. S. Wheeler & Co. acknowledged the receipt from Moors & Co. of the merchandise per steamer Sarmatian, as specified in the bill of lading describing the property, in all 214 boxes of tin plates, and added: "Which we hereby agree to hold in trust as their property, with proper insurance, but with liberty to sell and deliver said merchandise to purchasers for the sum of not less than $4,845, payable in cash on or before October 5, 1887; we further hereby agreeing to deliver to said Moors & Co. the proceeds of said merchandise until the acceptances given or to be given for the purchase money of said merchandise under credit issued for our account shall have been paid or satisfactorily provided for, with the understanding that the said J. B. Moors & Co. are not to be chargeable with any expenses incurred thereon,— the intention of this agreement being to protect and preserve unimpaired the lien of J. B. Moors & Co. on said merchandise."

The 214 boxes of tin plates arrived at Milwaukee, August 13, 1887, and were entered at the custom-house, and afterwards were delivered to a custom-house broker to whom E. S. Wheeler & Co. had sent two bills of lading indorsed to them by J. B. Moors & Co. for that purpose. The broker delivered said boxes to the garnishees, according to the instructions of E. S. Wheeler & Co., on August 16 and 17, 1887.

The moneys in controversy are the proceeds of these tin plates; and, upon the facts stated, the question is, To whom does the fund belong,— to Moors & Co., or to the simple

creditors of E. S. Wheeler & Co., who have garnished the same? Now, if the positive agreement of the parties can have effect, it is clear that Moors & Co. are entitled to the money. They furnished the funds to pay the purchase price of the property. The bills of lading were indorsed to them, as it was agreed they should be; and by the arrangement they were to have a specific claim and lien on the merchandise and the proceeds thereof, for which they had paid or come under engagements to pay by reason of the letter of credit. It is insisted by the appellants' counsel that the effect of the writings, which should, of course, be construed together, was to make Moors & Co. the owners of the property at the time of its sale to the garnishees; and such, we think, was the case. It will be noticed that E. S. Wheeler & Co. pledged the property to them, and gave them a specific lien upon it and the proceeds thereof, with full power and authority to take possession of and dispose of the same at their discretion, as a security for their advances. By the indorsement of the bills of lading to them, Moors & Co. became vested with the legal title to the merchandise, and had a right to claim the proceeds thereof when sold. The evidence shows, we think, that they parted with the bills of lading to enable the goods to be passed through the custom-house. But the express language of the agreement, and the obvious intent of the parties, is that Moors & Co. should become the owners of the property. Now, while the parties held this relation to each other, the "trust receipt" was given. By that receipt it appears that Moors & Co. delivered the property to E. S. Wheeler & Co. with a restricted power of sale. How does this transaction affect the rights of the parties? Wheeler & Co. received the property, which they agreed to hold in trust as the property of Moors & Co., with liberty to sell and deliver the same to purchasers on certain terms. This arrangement was placing the property in the possession of Wheeler &

Co. to sell the same for Moors & Co., the owners, and account for the proceeds. It created an agency to dispose of the tin plates on certain terms to purchasers, but the receipt expressly declares that the intention of the agreement was to protect and preserve unimpaired the lien of Moors & Co. on the merchandise. But Wheeler & Co. could, undoubtedly, under the arrangement, confer a good title on a purchaser; but they were bound to hold and account for the money arising from the sale to their principal, Moors & Co. This results from the nature of the transaction and the relation of the parties to the property in question. Moors & Co. could be said to be the owners of the property for security, subject to the right of Wheeler & Co. to acquire title to the same by paying all advances made for it, together with commissions due.

There are numerous decisions to the effect that, where a commercial correspondent advances money for the purchase of property, and takes possession either actually or symbolically, he becomes the owner thereof, even when the advance was made and the property was purchased at the request and for the ultimate use and profit of another, and there was an agreement to transfer the title to that other upon the performance of certain conditions, and ownership was taken solely for the protection of the party making the advance. Many of these decisions are cited in the briefs of counsel which firmly establish that rule of law. We shall not comment upon them, as we do not deem it necessary. The intent of the parties in this case is perfectly clear. Wheeler & Co. received the plates as the property of Moors & Co., with a restricted power of sale; and, as between them and the owner or principal, the proceeds belong to the latter. It is for their protection that the rule of law just referred to exists. Now, it will be borne in mind that the respondents stand in the place of Wheeler & Co. so far as the proceeds are concerned. As those proceeds arise

from the sale of Moors & Co.'s property by their agent, it seems very plain that they should go to the party to whom they belonged. They were in the hands of the garnishees when this action was commenced, and, therefore, could be identified as readily as the tin plates themselves could have been had they not been sold. Even if the proceeds had been collected from the garnishees by Wheeler & Co. before the assignment under the Connecticut insolvent law, still, by the decisions of this court in *Francis v. Evans*, 69 Wis. 115, and *McLeod v. Evans*, 66 Wis. 401, and *Bowers v. Evans*, 71 Wis. 135, Moors & Co. would have been entitled to a priority over other creditors in respect to that fund; but, since all the writings show that it was the intention of the parties that the merchandise purchased by Moors & Co. should be held as security for advances, and that it was only intrusted to Wheeler & Co. with power to sell as their property, it results necessarily, from the facts, that the proceeds could not be garnished by the creditors of Wheeler & Co. There would be no justice nor equity in taking the fund from the party whose means had purchased the property under the contract.

It is said this contract, being in the nature of a conditional sale, was not valid, because not filed in the proper office as required by sec. 2317, R. S. That section does invalidate a conditional sale of personal property, as to third parties, unless the contract is filed in the office of the clerk of the town, city, or village where the vendee resides, or, if a nonresident, then in the office of the clerk of the town, city, or village where the property may be at the time of making such contract. In this case, neither the vendor nor the vendee resided in this state, and the tin plates were in transit from Liverpool to Milwaukee when the contract was made. Besides, the contract must be regarded as either a Massachusetts or a Connecticut contract,— and it is immaterial which,— and is governed by

the laws of one or the other of those states, and not by the law of this state. The law in Massachusetts and Connecticut seems to establish the validity of a conditional sale, as the cases cited by counsel show. It seems unnecessary to observe that *Rawson Mfg. Co. v. Richards*, 69 Wis. 643, and *Thomas v. Richards*, 69 Wis. 671, were, beyond all question, Wisconsin contracts, and our statute applied to them. But the transactions here, so far as they affect Moors & Co. and E. S. Wheeler & Co. of New Haven, were had in Massachusetts and Connecticut; and by the law of either state the contract was valid.

So, upon the facts, we are quite clear that Moors & Co. are entitled to the avails of the tin plates which were sold to the garnishees, because they must be deemed the owners of the property. This is the plain meaning of the contract, and there is no statutory provision in this state which is in the way of giving effect to the intention of the parties in that regard. The respondents, as we have said, are simple creditors of E. S. Wheeler & Co., and their rights to these moneys are no stronger than the debtors' were. Nor did Moors & Co. waive any right to claim the fund by proving their claim against the debtors' estate in insolvency. *Francis v. Evans*, 69 Wis. 115; *McLeod v. Evans*, 66 Wis. 401.

It follows from these views that the judgment of the circuit court must be reversed, and the case remanded with directions to that court to order the fund to be paid to Moors & Co.

*By the Court.*— It is so ordered.