BRYANT, TRUSTEE OF NEWTON & CO., BANKRUPTS, *v.* SWOFFORD BROS. DRY GOODS CO.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 172.   Argued April 22, 23, 1909.—Decided May 24, 1909.

In this case, *held,* that the sale of a stock of dry goods under a contract by which the articles sold remained the property of the vendor until paid for, with provision for substitution of other goods and that proceeds of goods sold also belonged to the vendor, was a conditional sale.

The validity of conditional sales depends upon the law of the State where made, and in bankruptcy the construction and validity of such a contract must be determined by the local law of the State, *York Manufacturing Co.* v. *Cassell,* 201 U. S. 344, and the contract in this case as tested by the law of Arkansas is a conditional sale and is valid without record.

The trustee has no higher rights in regard to property sold to the bankrupt under conditional sale than the bankrupt had, and in this case *held* that the vendor was entitled to the goods unsold and the identified proceeds of those which had been sold.

Where the vendor of goods, sold to the bankrupt under conditional

sale, has taken possession, before the receiver is appointed, of the unsold goods and proceeds of those sold, but surrenders the same to the receiver under an arrangement approved by the referee, providing for the administration of the estate by the receiver, and that the ultimate disposition of the goods and proceeds surrendered shall be determined by the court, the trustee subsequently appointed is bound by the agreement and cannot question whether any of the property surrendered thereunder passed under the conditional sale.

THE record in this appeal, transmitted to this court from the Circuit Court of Appeals, contains the following findings of fact and conclusions of law:

"1. On July 20, 1904, Ernest M. Newton and John F. Newton, partners as E. M. Newton & Co., merchants at wholesale and retail in Arkansas, and Swofford Bros. Dry Goods Co., a corporation, of Kansas City, Missouri, engaged in the wholesale dry goods business, entered into a written contract as follows:

" 'Know all men by these presents: That Mr. E. M. Newton & Co., of New Lewisville, Lafayette County, Arkansas, a copartnership composed of E. M. Newton and J. F. Newton, party of the first part, has this day purchased from Swofford Bros. Dry Goods Co. and said Swofford Bros. Dry Goods Co., party of the second part, has sold to said E. M. Newton & Co. certain goods upon the following expressed conditions:

" '1. Said goods shall be selected by said first party from sample or from stock of said second party at Kansas City, Missouri, and same shall be shipped to said first party upon their request to New Lewisville, Arkansas, from which place they shall not be removed without the written consent of said second party, save and except that said first party shall have the right to sell said goods in the ordinary course of business, but not otherwise.

" '2. Said second party shall prepare at time of shipment full and complete invoices of the goods so sold and selected and shall deliver copies of said invoices by mail or otherwise to said first party. Such invoices shall consist of itemized list of the

articles so sold and shipped with the price and value of each article, and shall show also the credit terms upon which the same are sold and the rate of discount, if any, which is to be allowed upon payment of the purchase price in cash upon delivery or at an earlier date than that specified in said credit terms.

" '3. The title to and right to immediate possession of all the goods so sold and shipped by said Swofford Bros. Dry Goods Co. and of the proceeds derived from the sale of the same by the first party, whether in cash or note or book account, shall be vested and remain in said Swofford Bros. Dry Goods Co. until the full purchase price and the agreed value of the same shall be paid by said E. M. Newton & Co. to said Swofford Bros. Dry Goods Co. in cash; and any and all notes, checks and accepted drafts shall not be considered as payment, but merely as evidence of indebtedness. And upon taking possession of any notes and book accounts derived by said first party from the sale of said goods or any part thereof, said Swofford Bros. Dry Goods Co. shall have the right to collect the same either in its name or in the name of E. M. Newton & Co. by suit or otherwise and in case of disputed notes and accounts against persons of doubtful solvency, said second party may compromise and settle the same or may extend the time of payment thereof in such manner and upon such terms as may to it seem advantageous, and any new notes taken thereafter, whether in the name of Mr. E. M. Newton & Co., or in the name of said Swofford Bros. Dry Goods Co., shall be held and considered in all respects the same as the original evidence of indebtedness.

" '4. This contract and the terms thereof shall apply to all future orders given by the E. M. Newton & Co., and to all future sales and shipments made to them by said Swofford Bros. Dry Goods Co., so long as any part or portion of the purchase price of the goods sold and delivered hereunder shall remain unpaid, said Swofford Bros. Dry Goods Co. shall have the right to terminate this contract at any time, and said E. M. Newton & Co. may terminate the same at any time by paying

in full in cash whatever balance of the purchase price of the goods purchased and shipped shall then remain unpaid. Delivery of the goods properly packed and marked to a common carrier at Kansas City, Mo., consigned to the first party as above specified shall be deemed and considered a full and complete delivery thereof by said second party and all freight and transportation charges shall be paid by said consignees. The acceptance of goods subsequently sold and shipped by the first party and the placing of the same in their stores and warehouses at New Lewisville, Ark., or elsewhere, shall be held and considered sufficient to bring such goods within and under the terms hereof, shall be mentioned or referred to in the order so given or in the invoices given and delivered with each invoice.

"'Said first party shall keep all goods purchased hereunder properly insured at their expense for the benefit of second party; but the loss or destruction of such goods by fire or otherwise shall not cancel the indebtedness thereof, but said first party shall still remain liable to second party for any part of the purchase price remaining unpaid.

"'In witness whereof the parties above named have hereunto placed their hands and seals in duplicate this 20th day of July, 1905.

"'E. M. NEWTON & Co.,
"'SWOFFORD BROS. DRY GOODS CO.,
"'Signed by WM. MOORE, Sec.'

"2. The contract was not filed or recorded.

"3. Pursuant to the contract and prior to June 30, 1905, the Dry Goods Company delivered to the Newtons goods of the value of $15,369.57. The latter paid on account thereof the sum of $2,059.01. On June 30, 1905, the unpaid balance was $13,310.56.

"4. The goods delivered under the contract were placed by the Newtons in their stock with other goods obtained from other parties, but they were of such character and contained such marks as rendered them capable of being identified and

separated. It was contemplated by the parties that the New-
tons might sell the goods so delivered in the usual course of
their business. The Newtons did not keep separate accounts
of their resales of the goods nor did the Dry Goods Company
require them to make reports thereof.

"5. On June 30, 1905, when the Newtons were insolvent and
the Dry Goods Company knew it, they surrendered to the Dry
Goods Company as belonging to it under the provisions of the
contract, goods of the value of $5,337.21; notes to the amount
of $1,684.32, and customers' accounts to the amount of
$8,277.04. The goods were so surrendered by the Newtons as
being the unsold part of those delivered under the contract, and
the notes and accounts as representing proceeds of their sales of
like goods. Actual possession was taken by the Dry Goods
Company.

"6. In fact the goods surrendered to the Dry Goods Com-
pany were, with slight exception, goods that had been de-
livered under the contract, but only about one-half in amount
of the notes and accounts surrendered represented proceeds of
other goods delivered under the contract.

"7. On July 3, 1905, three days after the surrender of the
property as above mentioned, the Newtons filed their vol-
untary petition in bankruptcy, were adjudged bankrupts, and
Thad. A. Bryant was appointed receiver. In one of the sched-
ules attached to the verified petition in bankruptcy the Dry
Goods Company was listed as a secured creditor, with a state-
ment of the facts upon which its rights were based, and re-
citals of the surrender to it of the goods, notes and accounts,
that the notes and accounts were proceeds of the goods fur-
nished by the Dry Goods Company under the contract and
resold by the Newtons to their customers, and that the goods,
notes and accounts were then in the possession of that com-
pany.

"8. After the appointment of the receiver in the bank-
ruptcy proceeding he demanded from the Dry Goods Company
possession of the goods, notes and accounts mentioned. The

demand was refused, but afterwards the Dry Goods Company surrendered them to the receiver under a written stipulation that they might be disposed of by him in connection with the sale of the other property in his hands, but that the Dry Goods Company should not be prejudiced thereby, and that the proceeds should be held in lieu of the property so surrendered to abide the final determination of a court of competent jurisdiction as to the ownership thereof, and if the Dry Goods Company prevailed it should have the proceeds free of fees, charges and expenses. As one of the conditions upon which it was made it was expressly admitted in this stipulation that the goods, notes and accounts in controversy were then in the actual, exclusive and adverse possession of the Dry Goods Company, that the goods were part of those delivered to the Newtons under the contract of July 20, 1904, and that the notes and accounts were proceeds of other goods delivered under that contract. This stipulation was made subject to the approval of the referee in bankruptcy. It was executed by the Dry Goods Company and the receiver, and the referee duly endorsed his approval thereon. Upon the faith thereof the goods, notes and accounts were then surrendered to the receiver. No fraud or deception was practiced by the Dry Goods Company upon the referee or the receiver in connection with the making of this stipulation.

" 9. Thad. A. Bryant who had been appointed receiver was duly selected as trustee. He sold the goods in controversy for $3,135.00. The notes and accounts were not sold but at the time of the hearing of this matter before the referee he had collected $2,250.00 on account thereof and still retained in his hands those that were uncollected. He has kept a separate account of these funds and held sufficient funds to answer the result of the litigation.

" 10. The Dry Goods Company thereupon presented its intervening petition seeking the payment to it of the sums realized as mentioned in the preceding finding and the restitution to it of the uncollected notes and accounts. The controversy

in the cause was presented by the intervening petition, the trustee's answer thereto and the reply of the Dry Goods Company.

*" Conclusions of Law.*

"1. The contract of July 20, 1904, is a contract of conditional sale and not of mortgage, and as such was not required by the laws of Arkansas to be filed or recorded.

"2. Under the laws of Arkansas the contract was valid as between the parties thereto, notwithstanding the fact that it authorized the vendees to resell the goods delivered thereunder.

"3. It was also valid as between the parties thereto not only in respect of such of the goods delivered thereunder as remained unsold when the vendor demanded and secured possession from the vendees, but also in respect of the notes and accounts which represented proceeds of like goods resold by the vendee to their customers and which could be so identified and segregated.

"4. The contract being valid under the local law as between the parties thereto the trustee in bankruptcy of the vendee cannot avoid or defeat the title of the vendor who took possession prior to the institution of the proceedings in which the vendees were adjudged to be bankrupts. The trustee has no greater right or title than the bankrupts.

"5. Inasmuch as the bankruptcy court obtained from the vendor possession of the notes and accounts in controversy upon the faith of a stipulation made with its approval and without practice of fraud or deceit that such notes and accounts were the proceeds of goods covered by the contract of conditional sale, and still holds to such possession, the trustee is estopped from disputing the fact stipulated.

"6. Swofford Bros. Dry Goods Company, the vendor, is entitled to a decree that the trustee in bankruptcy pay to it the sum of $3,135.00, the proceeds of the goods in controversy, and the further sum of $2,250.00, the collections of notes and accounts in controversy made by the trustee prior to the hearing

before the referee, and also for such collections as may have been made since that time and for the surrender of such of said notes and accounts as may remain uncollected and for costs. The sums mentioned should be paid in full."

*Mr. William H. Arnold,* with whom *Mr. James K. Jones* was on the brief, for appellant:

The receiver did not have authority to make the admission, so that it might not be questioned by the trustee, contained in the agreement of July 4, 1905, that the notes and accounts turned over to the intervenor were proceeds of sales of goods purchased from Swofford Bros. Dry Goods Co.

While the receiver undoubtedly had the right and it was his duty to take charge of the bankrupt estate, he did not have authority, under the statute creating his office, to enter into any kind of an agreement which would in any manner affect, or give over to, a claimant the property of the bankrupt estate. The trustee is primarily the representative of the creditors and not the receiver. The receiver is non-partisan and he acts as an agent for the court in protecting the property against loss. *Booth* v. *Clark,* 17 How. 322.

By § 70 of the Bankrupt Act the title of the bankrupt's property is vested in the trustee. If the title of Newton & Company to these notes, accounts and goods, to which the intervenor could not make claim, vested in the trustee, then it would seem that the receiver would be without power to make any contract whereby that title could be divested. In this case the stipulation, however, has been sustained by the Honorable Circuit Court of Appeals, and the direct effect of it was to divest the title of property from the trustee which it was intended by the Bankrupt Act should pass to him.

But the trustee has not in himself the right of unlimited disposition of the property of the bankrupt. He cannot compromise or arbitrate a controversy, except in a certain way prescribed by the statute and by the general orders in bankruptcy. Certainly the receiver, who has not as much power

as the trustee, should not, therefore, be allowed to make contracts or deals without any restriction whatever, whereby the property which belongs to the creditors would be wasted or given away. *Wallace* v. *Loomis,* 97 U. S. 146; *Ray* v. *Norsworthy,* 23 Wall. 128; *White* v. *Schloerb,* 178 U. S. 542.

The contract of July 20, 1904, was a mortgage or secret lien which was fraudulent as to creditors of Newton & Company. *Herryford* v. *Davis,* 102 U. S. 235.

There are a number of decisions of the Supreme Court of Arkansas sustaining contracts wherein it is stipulated that the title of the property is to remain in the vendor until the price is paid, but these decisions are with reference to such things as machinery, farming implements, live stock, and where it is not agreed that the property shall be resold. *Gibson* v. *Martin,* 38 Arkansas, 207; *McIntosh & Beam* v. *Hill,* 47 Arkansas, 363; *Carroll* v. *Wiggins,* 30 Arkansas, 402; *Simpson* v. *Shackerford,* 49 Arkansas, 63; *McRea* v. *Merrifield,* 48 Arkansas, 160; *Cincinnati Safe Co.* v. *Kelly,* 54 Arkansas, 476; *Edgewood Distilling Co.* v. *Shannon,* 60 Arkansas, 133; *Dedman* v. *Earle,* 52 Arkansas, 164; *Ferguson* v. *Hetherington,* 39 Arkansas, 438; *Ames Iron Works* v. *Rea,* 56 Arkansas, 450; *Morris* v. *Cohn,* 55 Arkansas, 401; *Bank of Little Rock* v. *Collins,* 66 Arkansas, 240; *Faisst* v. *Waldo,* 57 Arkansas, 270.

The doctrine of these cases follow the decisions of the Supreme Court of the United States. *Sturm* v. *Boker,* 150 U. S. 312.

There is an obvious difference in reserving the title to implements, wagons, grist-mills, tools, etc., under such contracts, and gents' furnishing goods or general merchandise, where there can be no question of the identity of the wagons, machinery, etc., but there would always be a question with reference to the identity of general merchandise. The very nature of the goods themselves, added to the power of disposition as in the case at bar, without being required to keep them separate from other goods or the proceeds separate from the general stock, ought to bar a recovery in this case.

This difference is recognized by the Supreme Court of Arkansas. *Lund* v. *Fletcher*, 39 Arkansas, 334. See also *Robinson* v. *Elliott*, 2 Wall. 513; *Means* v. *Dowd*, 128 U. S. 273; *Blennerhassett* v. *Sherman*, 105 U. S. 100.

The decisions of the Supreme Court of Arkansas, under practically the same conditions as in the case at bar, show that the intervenors' contract is fraudulent in law and cannot be sustained. *Lund* v. *Fletcher*, 39 Arkansas, 335; *Martin* v. *Ogden*, 41 Arkansas, 192; *Fink* v. *Ehrman Bros.*, 44 Arkansas, 310.

The case of *Triplett* v. *Mansur & Tebbetts Implement Co.*, 68 Arkansas, 230, cited in opinion of Circuit Court of Appeals, has no application to this controversy.

*Mr. Ernest S. Ellis*, with whom *Mr. Edgar C. Ellis* was on the brief, for appellee:

The stipulation entered into between the Swoffords and the receiver, under the supervision and with the approval of the referee, by virtue of which the Swoffords surrendered possession of the property in controversy to the court, and under which it was later sold by the trustee who now holds the proceeds, is valid and binding on the parties to this action, and cannot be repudiated nor ignored by the trustee. The acceptance and retention of benefits thereunder by the trustee operates as a ratification of same on his part, and as a waiver of any lack of authority or irregularities in its execution. *Bryan* v. *Bernheimer*, 181 U. S. 188.

Under said stipulation the facts as to whether all of the goods returned by the Newtons to the Swoffords were actually bought from them, and as to whether the notes and accounts assigned by the Newtons to the Swoffords represented exclusively proceeds derived from a sale of their goods, has been settled and agreed upon, and are not questions to be litigated in this action. Judgment in relation thereto must, therefore, be made upon the basis of said stipulation.

The written instrument of July 20, 1904, executed by the

Swoffords and the Newtons, and under which the property in controversy was sold by the Swoffords and later returned to it by the Newtons, is a contract of conditional sale; and there is no law in Arkansas which either requires or permits it to be filed or recorded. It is valid between the parties, and valid, also, against the trustee in bankruptcy, who stands merely in the shoes of the bankrupts, and is in no sense a creditor armed with process, a subsequent mortgagee or a purchaser in good faith. *Triplett* v. *Mansur & Tebbetts Impt. Co.*, 68 Arkansas, 230 (57 S. W. Rep. 261); and cases cited.

MR. JUSTICE MOODY, after making the foregoing statement, delivered the opinion of the court.

The merchandise which was delivered by Swofford Bros. Dry Goods Co. to E. M. Newton & Co. was delivered under the terms of a written contract. That contract provided that the title to the goods until their sale, and to the proceeds derived from their sale, whether in the form of cash, notes or book accounts, should be and remain in the Dry Goods Company. The contract gave the Newtons the right to sell the goods in the ordinary course of business, but, as has been said, provided that the proceeds of the sale, in whatever form they existed, should be the property of the Dry Goods Company. When the Newtons became insolvent and ceased business they, in recognition of the obligations due from them under this contract, returned to the Dry Goods Company that part of their goods which remained unsold. The character and marks of the goods rendered them capable of being identified and separated. They turned over at the same time, as and for the notes and accounts representing the proceeds of sales of the company's goods, certain notes and customers' accounts. It was found as a fact that one-half in amount of these notes and accounts represented the proceeds of sales of other goods than those delivered under the contract. It, therefore, now appears, if it is competent to show it, that this one-half of the

notes and accounts did not belong to the Dry Goods Company, and ought not to have been turned over to it, and that, on the contrary, they should have gone into the estate of the Newtons, who subsequently became bankrupt. Three days after the surrender of this property the Newtons, on their voluntary petition, were adjudged bankrupts and the appellant was appointed receiver. He demanded of the Dry Goods Company the possession of the goods, notes and accounts mentioned, but the demand was refused. Subsequently a written contract was entered into between the Dry Goods Company and the receiver, with the approval of the referee. No fraud or deceit induced the making of this contract. By its terms the Dry Goods Company, on its part, surrendered the goods, notes and accounts to the receiver, and agreed that he might dispose of them in connection with the assets of the estate, and that the proceeds of the property thus disposed of should be held in lieu of it to abide the determination of a court of competent jurisdiction. The receiver, on the other hand, agreed that the goods, notes and accounts were in the actual and adverse possession of the Dry Goods Company, and that the goods were part of those delivered to the Newtons under the contract between them and the Dry Goods Company before referred to, and that the notes and accounts were the proceeds of other goods delivered under that contract. Subsequently, the receiver was appointed trustee and sold the goods and collected a part of the notes and accounts. The proceeds of the goods, and of the collections are held to await the result of this litigation, which is in the form of an intervening petition of the Dry Goods Company.

We think it clear that the contract under which the goods were delivered to the Newtons was one of conditional sale. *Harkness* v. *Russell*, 118 U. S. 663; *Wm. W. Bierce, Ltd.*, v. *Hutchins*, 205 U. S. 340. There is nothing in the nature of this contract which would forbid the parties from entering into it if it is valid by the laws of the State where made, but in bankruptcy the construction and validity of such a contract must be

determined by the local laws of the State. *Thompson* v. *Fairbanks*, 196 U. S. 516; *Humphrey* v. *Tatman*, 198 U. S. 91; *York Manufacturing Company* v. *Cassell*, 201 U. S. 344. That such a contract is a conditional sale and is valid without record is the law of Arkansas. *Triplett* v. *Mansur & Tebbetts Implement Co.*, 68 Arkansas, 230. The trustee has no higher· rights in this regard than the bankrupt. *York Manufacturing Co.* v. *Cassell, supra.*

It follows that, so far as the identified goods and notes and accounts are concerned, the intervenor, the Dry Goods Company, must prevail.

It has turned out, according to the finding of facts, that some small fraction of the goods and about one-half of the notes and accounts which were delivered by the Newtons to the Dry Goods Company, as and for the goods, notes and accounts which were the property of that company, were not in fact such, and the question therefore arises whether, under the circumstances disclosed in the findings, the trustee is entitled to avail himself of these facts. We think it was rightly held by the court below that he was not. There seems to be no reason for a nice consideration of the powers of receivers and trustees. When the receiver was appointed he found all the property in dispute in the hands of the Dry Goods Company, to which it had been delivered by the Newtons, as and for the property of the company, and by which it had been received as its own property. When the receiver made his demand for it the return was at first refused. The parties in the controversy, then being at arm's length, agreed that if the Dry Goods Company would give up the advantages of possession and instead of converting the goods, notes and accounts into cash in its own way and on its own account, permit the receiver to do so, then those goods should be deemed part of those delivered· under the contract and the notes and accounts the proceeds of other goods delivered under the contract. This arrangement was approved by the referee. The trustee has taken the property under it and has never offered to return the property, or

any part of it. The property has in large part been sold or otherwise disposed of in the course of the bankruptcy administration. Under these circumstances we are of opinion that the trustee, the appellant in this case, was bound by the agreement of the receiver, that all the property in dispute should be conclusively deemed that which passed under the original conditional contract or the proceeds thereof.

*Judgment affirmed.*