### In re REGEALED ICE CO.

### In re GREAT LAKES ENGINEERING WORKS.

· (District Court, D. Rhode Island. December 19, 1911.)

#### No. 1,049.

1. BANKRUPTCY (§ 140*)—OWNERSHIP OF PROPERTY—CONTRACT FOR BUILDING OF MACHINES—RESERVATION OF TITLE.

Bankrupt, an ice company, contracted with another corporation for the building and installing by the latter of the machinery for an ice plant, including an engine, to be paid for in three installments, the last when the work was completed and the machinery met certain tests, and the contractor to retain title to all of the property, which was to be considered personalty, until payment of the full price. Thereafter the contractor contracted with petitioner to make and furnish the engine and other machinery on terms similar to those of the main contract, petitioner retaining title until full payment with right of removal in case of default. Before petitioner installed the engine, it notified bankrupt of the terms of the contract, and that but one-third of the purchase price had been paid. At that time bankrupt had made two of the three pay-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ments on the plant. The contractor gave petitioner an order on the bankrupt for the remainder due on the engine, which was accepted, but not paid. Bankrupt never made the third payment on the plant, claiming that it did not meet the required tests. *Held*, that although the order and acceptance did not work a novation, and assuming that bankrupt was justified in refusing to make further payment to the contractor, it did not acquire title to the engine, which it permitted to be installed with full knowledge of petitioner's rights reserved by its contract, and that petitioner was entitled to reclaim it from the trustee in bankruptcy; it appearing that it could be removed without injury to the other property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 221, 225; Dec. Dig. § 140.*]

**2. ESTOPPEL (§ 75*)—EQUITABLE ESTOPPEL—GROUNDS.**

Under the facts shown, petitioner was not estopped to claim title as against the bankrupt, which under its own contract did not acquire title to any part of the plant unless full payment was made therefor.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 192–195; Dec. Dig. § 75.*]

**3. ESTOPPEL (§ 52*)—EQUITABLE ESTOPPEL—NATURE OF DOCTRINE.**

The doctrine of estoppel is properly invoked only for the purpose of working out results that are in accord with justice.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 121–125, 127; Dec. Dig. § 52.*]

**4. SALES (§ 472*)—CONDITIONAL SALES—VALIDITY.**

In the absence of fraud, actual or constructive, contracts of conditional sale are valid against third persons.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1366–1376; Dec. Dig. § 472.*

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

In the matter of the Regealed Ice Company, bankrupt. On review of order of referee dismissing petition of Great Lakes Engineering Works for reclamation of property. Reversed.

Frank Healy, for Great Lakes Engineering Company.
Livingston Ham, for trustee in bankruptcy.

BROWN, District Judge. This is a petition for review of the order of the referee dismissing the petition of Great Lakes Engineering Works for reclamation of an engine, etc.

[1] By written contract dated July 22, 1909, the Federal Ice Machine Company agreed to fully equip the plant of the Regealed Ice Company with ice-making machinery, including an engine, and granted a license under certain letters patent for a round sum of $70,000, with royalties on ice to be manufactured and sold. The contract shows that it was understood that the machinery was not in existence, but was to be manufactured for future delivery. Payments were to be made one-third on signing contract, one-third when all necessary parts of the machinery had been shipped to Providence, one-third when the plant was ready for operation and fulfilled certain tests.

The contract reserves title to the Federal Ice Company until the payments have been completed, and provides that the machinery and apparatus shall remain personal property until fully paid for, notwithstanding the manner of its annexation to realty.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

By supplemental agreement of November 1, 1909, it was agreed that of the second payment not yet due, $5,000 should be due at once, and $5,000 on November 10, 1909, and a license fee was substituted for royalties on ice to be manufactured.

Subsequent to the making of the contract of July 22, 1909, with the Regealed Ice Company, the Federal Company, on August 13, 1909, entered into a contract with the petitioner, the Great Lakes Engineering Works, whereby the petitioner agreed to furnish certain machinery, including a steam engine, for $10,450, one-third cash when ready for operation, balance 30 days after date of second payment. The title to remain in the seller until the entire price should be paid, with reservation of a right to remove the machinery in case of default.

Under its contract with the Great Lakes Company the Federal Ice Company paid only one-third of the contract price, and therefore never acquired title as against the Great Lakes Company. The machinery was forwarded to Providence by the Great Lakes Company. On March 1, 1910, the Great Lakes Company by letter notified the Regealed Ice Company that it had directed its man to go from New York to set up the engine, and also notified the Regealed Ice Company of its reservation of the title in its contract with the Federal Ice Company. The letter was received in due course about March 3, 1910, so that before the work of installation the Regealed Ice Company had knowledge of the reservation of title. On March 11, 1910, the Regealed Ice Company acknowledged by letter the receipt of notice of the Great Lakes Company's claim of title.

On March 10, 1910, the Regealed Ice Company wrote to the Federal Ice Company, stating that they had been notified of the reservation of title by the Great Lakes Company, saying:

"Under the circumstances we cannot consider this machinery as delivered to us by you in accordance with our contract until you have title to it and are in a position to give us a clear title upon payment in full by us."

The installation of the machinery took about two months, during which the Federal Ice Company and the Regealed Ice Company had correspondence on the subject.

Subsequently, on May 16, 1910, the Federal Ice Company assigned to the Great Lakes Company the amount remaining due for the engine ($7,147.60) out of moneys due or to become due to the Federal Ice Company under its contract with the Regealed Ice Company. This assignment, or "order," was accepted by the Regealed Ice Company with a reservation of all its rights under its contract with the Federal Ice Company. The referee—

"does not find that there has been any novation or substitution of the Regealed Ice Company's agreement for that of the Federal Ice Machine Company to pay the Great Lakes Engineering Works, whereby the Regealed Ice Company stepped into the shoes of the Federal Ice Machine Company and the latter was exonerated."

This finding is approved. There was a mere order for the payment of money when it should be due, which did not otherwise affect the contract rights of the parties. It gave the Regealed Ice Company an

opportunity to protect itself against the claim of title asserted by the Great Lakes Company by paying the balance due on the engine directly to the Great Lakes Company and deducting the amount from its final payment to the Federal Ice Company.

It is quite clear that the Federal Ice Company never acquired title from the Great Lakes Company, since it paid only one-third of the contract price. It is also quite clear that the Regealed Ice Company never acquired title from the Federal Ice Company, since it never made full payment according to the terms of the contract with that company.

Assuming it to be true for the purposes of this petition only that the Regealed Ice Company was not in default, and was justified in its refusal to pay the Federal Ice Company the third installment called for by the contract, it could not refuse to accept the machinery and also claim title to it. If the machinery was not according to contract, it could be rejected. Mt. Vernon Refrigerating Company v. Fred W. Wolf Co. (C. C. A.) 188 Fed. 164.

The referee was of the opinion that, as the Regealed Ice Company before the notice of the Great Lakes Company's claim of title had paid two of the three installments to the Federal Ice Company amounting to about $45,000, it was a bona fide purchaser without notice. "It has in good faith paid two-thirds of the purchase price."

This finding, however, fails to give due consideration to the fact that during the installation of the engine it was fully understood that it had not become the property of the Federal Ice Company, and would not until the payment of the balance due the Great Lakes Company. The Regealed Ice Company was not to acquire title from the Federal Company until the final payment upon the entire contract, and the Federal Company was not to acquire title until full payment to the Great Lakes Company. By the payment of the order which it had accepted, however, the Regealed Ice Company could acquire title to the engine; this special item of the entire contract being thus segregated and dealt with as a special subject-matter. The finding that to the extent of payments of the first two installments upon the entire contract the Regealed Ice Company became a purchaser for value without notice is contrary to the evident understanding of the parties at the time of the acceptance of the order for payment out of the balance due. Furthermore, it is quite apparent that payments of the first two installments were made in compliance with the entire contract, and not for the purpose of immediately acquiring title to machinery which was yet to be installed, and to be subject to tests as to its capacity before it should be accepted.

It is true that the Great Lakes Company understood that its engine was to be installed upon the premises of a third party, the Regealed Ice Company, but this fact alone was not inconsistent with a retention of title as against the third party, since the installation was to be made upon behalf of the Federal Ice Company under a special contract whereby the Federal Ice Company was to retain title until paid, and the Regealed Ice Company was not to accept until the demonstration of the capacity of the plant to perform certain work.

[2] In considering whether the Regealed Ice Company has acquired any rights through estoppel, due effect must be given to the terms of its contract with the Federal Ice Company, whereby this machinery was to remain personalty irrespective of the manner of annexation. Upon the most extreme application of the doctrine of estoppel, the Regealed Ice Company could acquire no greater rights than it had under its contract with the Federal Ice Company. If it made payments under these contracts, it still got no title, and could not claim title by annexation to the realty by reason of its express contract to the contrary.

As it must be conceded that the machinery was erected on behalf of the Federal Company, and that as against that company the stipulation that it should remain personalty was effective, it must also be held effective as against any claim of title by annexation asserted against the Great Lakes Company. The utmost that can be claimed with any color of justification is that the Great Lakes Company can assert no title inconsistent with that of the Federal Ice Company.

The contention that against the Great Lakes Company a larger title can be asserted than against the Federal Ice Company is inequitable. Bellamy v. Davey, 60 L. J. Ch. 778.

A further consideration of the case will show, however, that there is no sound basis of fact upon which it can be held that the Great Lakes Company is estopped to claim title to this machine.

Counsel for the trustee contends that a conditional vendor who knows that goods are bought for the purpose of resale is estopped from asserting his ownership as against any party who has altered his position in the faith that the apparent ownership of the conditional vendee is actual ownership. But the difficulty here is that there is no evidence that the Regealed Ice Company paid anything in the belief that it thereby acquired title to the machinery, or in reliance upon an apparent ownership of the conditional vendee. Its contract with the Federal Ice Company was certainly not made with such reliance, since it was known that the machinery was not in existence. The record shows that of the sums paid before notice of the Great Lakes Company's title the first payment and $10,000 in addition were paid while the machinery was still in the hands of the Great Lakes Company. It does not appear that any sum was paid upon the understanding that the Federal Ice Company had acquired title. It is true that the second payment was to be made by the Regealed Ice Company to the Federal Company when all necessary parts of the machinery had been shipped to Providence, but part of this payment had been made at an earlier date by agreement, and the contract provided that title should not pass until completion of all the payments. Nor does it appear that in making payment of the rest of the second installment the Regealed Ice Company was led to do so by any act of the Great Lakes Company.

The fact that the Great Lakes Company had shipped the engine to Providence, in pursuance of its contract with the Federal Ice Company, fixed the date when the second installment became due from the Regealed Ice Company to the Federal Ice Company on the entire contract.

It is clear, however, from the contract that the payments made were not for the purpose of acquiring a title proportionate to the amounts paid and did not effect either a total or a partial transfer of title. Clarkson v. Stevens, 106 U. S. 505, 1 Sup. Ct. 200, 27 L. Ed. 139. The exact amount paid after the shipment of the machinery does not appear. It does appear, however, that but a small proportion of the $45,000 was unpaid at the time of shipment. The contention that the Regealed Company was a bona fide purchaser to the extent of $45,000, in reliance upon the apparent title of the Federal Ice Company, is not supported by the facts in evidence.

Up to the time the work of installation began, the Regealed Ice Company knew that it had acquired no title to the machinery. Any understanding on its part that the Federal Ice Company had perfected its title, if in fact there was such understanding, was removed by the notice received from the Great Lakes Company. This notice was timely, since it preceded the installation of the machinery, and gave the Regealed Ice Company an opportunity, of which it availed itself, to protect its rights. It permitted the work of installation to proceed, with full knowledge of the situation as is shown by its letter of March 10, above set forth.

It was fully understood that the Federal Ice Company had not paid for the machine, and that until final payment was made either by the Federal Ice Company or by the Regealed Ice Company under its acceptance of the order of the Federal Ice Company that the Great Lakes Company still claimed title.

As the amount of the third payment to be made by the Regealed Ice Company to the Federal Company was upwards of $22,000, and the amount due upon the engine was $7,147.60, secured to the Great Lakes Company by an accepted order upon the Regealed Company, this must be regarded as a sensible business arrangement satisfactory to all and equitable to all. Neither the trustee, nor the creditors have any greater rights than the bankrupt under this arrangement.

[3] I am unable to see any semblance of equity in the claim of the trustee that the bankrupt's estate should be increased to the extent of some $7,000 at the expense of the Great Lakes Company, which has furnished property for which to that amount it is still unpaid. The doctrine of estoppel is properly invoked only for the purpose of working out results that are in accord with justice.

[4] The following cases are cited to support the proposition that, where the conditional vendee goes into bankruptcy, his trustee is entitled to that part of the goods which have not been resold, in spite of the attempted reservation of title. In re Garcewich, 115 Fed. 87, 53 C. C. A. 510; In re Carpenter (D. C.) 125 Fed. 831; Pontiac Buggy Co. v. Skinner (D. C.) 158 Fed. 858; In re Priegle Paint Co. (D. C.) 175 Fed. 586; In re Penny & Anderson (D. C.) 176 Fed. 141. How far these cases correctly state the rules of law, and in what respects they are distinguishable, we need not consider in detail. Some of these cases are referred to as contrary to the weight of authority by the Circuit Court of Appeals in the

Eighth Circuit. Dunlop v. Mercer, 86 C. C. A. 435, 156 Fed. 545. But it seems well settled that in the absence of fraud, actual or constructive, contracts of conditional sale are valid against third persons. Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285; Bierce v. Hutchins, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828; Bryant v. Swofford Bros., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997; In re Pierce, 87 C. C. A. 537, 157 Fed. 755.

There is no contention that there was actual fraud, and the principles of constructive fraud are not applicable for the reason that as a matter of fact the Great Lakes Company did not clothe the Federal Ice Company with such independent possession or apparent title as misled a purchaser, and the Regealed Ice Company entered into its contract with the Federal before the Great Lakes Company had any connection with the transaction. It paid under its previous contract and not in reliance upon any subsequent act of the Great Lakes Company. The doctrine of estoppel and of constructive fraud cannot be justly invoked in this case to divest the Great Lakes Company of its legal rights in this machinery. It has been guilty of no conduct prejudicial to the Regealed Ice Company. On the contrary, it acted openly, and gave timely notice to the Regealed Ice Company of its rights, and that the Federal Ice Company had not acquired title.

According to the positive testimony for the petitioner, the engine, etc., can be removed without injury to the realty. The testimony of the trustee as to the dimensions of the doorways, etc., is insufficient to rebut this testimony. The petitioner, moreover, agrees to give bond to secure the trustee against any damage from such removal.

As the petitioner declares that its only purpose in pursuing its claim for reclamation is to secure the unpaid balance of its account, and as it has received from the Federal Ice Company one-third of the contract price, a draft decree may be presented reversing the order of the referee dismissing the petition, and granting the petition for reclamation unless the trustee shall within 20 days elect to pay the unpaid balance due the petitioner, with interest to the date of such payment; provided, however, that before removal of the machinery the petitioner shall give bond to secure the trustee against damage from such removal, the amount and terms thereof to be approved by this court before removal of the machinery.