**In re ABELL.**

**JOHN DEERE PLOW CO. v. HAMILTON.**

Circuit Court of Appeals, Seventh Circuit.
June 8, 1927.

Rehearing Denied July 22, 1927.

No. 3852.

1. **Bankruptcy** ⊜➔140(1⅝)—**Unrecorded contract for sale of plows for resale held valid "conditional sale contract."**

Contract under which bankrupt purchased plows for resale, though unrecorded, *held* valid contract of conditional sale, as between seller and buyer, where ownership was retained in

seller, and in event of sale by buyer proceeds belonged to seller under contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conditional Sale.]

2. Bankruptcy ⊛140(1⅓)—In bankruptcy, construction of conditional sale contract under which bankrupt purchased is determined by state laws.

In bankruptcy, construction and validity of conditional sale contract under which bankrupt purchased plows for resale must be determined by local laws of state.

3. Bankruptcy ⊛140(1⅝)—As against unrecorded conditional sale contract, trustee in bankruptcy of buyer held not entitled to plows purchased for resale (Bankruptcy Act, § 47a [2], as amended in 1910 [Comp. St. § 9631]; Cahill's St. Ill. 1921, p. 3040, and c. 77, § 10, p. 2106).

As against unrecorded conditional sale contract, trustee in bankruptcy of buyer *held* not entitled to plows purchased for resale, in view of Bankruptcy Act, § 47a (2), as amended June 25, 1910 (Comp. St. § 9631), and Cahill's St. Ill. 1921, p. 3040, and chapter 77, § 10, p. 2106, since no title passed to buyer under such contract.

4. Bankruptcy ⊛151—Rights of trustee in bankruptcy are those of creditor holding lien, and are determined by state laws.

Trustee in bankruptcy is not purchaser for value, but his rights are those of creditor holding lien by legal or equitable proceedings, which must be determined and measured by laws of state.

5. Bankruptcy ⊛140(1½)—In reclamation proceedings by seller under conditional sale contract against buyer's trustee in bankruptcy, latter may elect to pay balance due (Uniform Sales Act of Illinois).

Under Uniform Sales Act of Illinois (Laws 1915, p. 604), seller under unrecorded conditional sale contract is not entitled to possession of goods after payment therefor, so that, in his reclamation proceeding against buyer's trustee in bankruptcy, latter had right to pay balance due.

Appeal from District Court of the United States for the Eastern District of Illinois.

In the matter of Delbert P. Abell, bankrupt. Reclamation proceeding by the John Deere Plow Company against Verne Hamilton, trustee of the estate of Delbert P. Abell, bankrupt. From an order denying the petition, petitioner appeals. Reversed, with directions.

Richard O. Rumer and Fred L. English, both of St. Louis, Mo., for appellant.

John C. Robertson, of St. Louis, Mo., for appellee.

Before EVAN A. EVANS, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. At the time of the bankruptcy, bankrupt, an Illinois merchant, turned over to the trustee plows, etc., purchased by him for resale under a contract with appellant. Appellant's reclamation proceedings were based on the proposition that its contract, although unrecorded, was such a conditional sale contract, under the Uniform Sales Act of Illinois (Laws 1915, p. 604), as entitled it to the merchandise as against the trustee in bankruptcy. The denial of the petition is assigned as error. Material parts of the contract are in the margin.[1]

[1] It is expressly agreed that the title to and ownership of all goods delivered to and held by the dealer under this contract shall continue and remain vested in the plow company, unless expressly surrendered by it in writing by an officer thereof, until full payment for all of the goods so shipped shall have been made in cash to the plow company.

The acceptance of a note or notes and renewals thereof for the purchase price or any part thereof, or the recovery of a judgment for the whole or part thereof, or on any note given therefor, shall not be deemed a waiver of the terms of this agreement, until such note or notes or renewals thereof, or said judgment or judgments, shall be fully paid in cash. The ownership of said goods, in the meantime, shall continue and remain vested in the plow company.

The sale of any of said goods by the dealer shall not be deemed a waiver of the provisions of this contract. In the event of the sale of any of said goods described herein by the dealer prior to the payment thereof to said plow company, the proceeds of such sale shall belong to and be the property of said plow company. The failure or omission of the dealer to turn over to the said plow company the proceeds of the sale of said goods when received shall not be deemed a waiver of the provisions of this contract, nor shall the failure of the plow company to demand or receive such proceeds be deemed a waiver of said provisions.

Cash proceeds shall be turned over to the plow company as and when collected by the dealer, and shall be applied on such of the indebtedness of the dealer as the plow company may elect.

Notes and accounts delivered or assigned by the dealer to the plow company as proceeds of sales, together with any collateral notes and accounts which may be delivered or assigned by the dealer to the plow company as collateral security, shall be held by the plow company until full payment in cash shall be made by the dealer of any and all indebtedness due under this contract or which thereafter become due from the dealer to the plow company.

The plow company is hereby authorized to collect any and all notes and accounts delivered to it, as aforesaid, and to apply the proceeds on the dealer's indebtedness; to reduce the open accounts to notes; to renew or extend the time of payment of any note or demand and any security covering the same, without consent of the dealer, such renewal to

[1] The proposition requires answer to two questions: (a) Was the contract one of conditional sale? (b) As against the unrecorded conditional sale contract of merchandise for resale, was the trustee in bankruptcy entitled to the merchandise, sold for resale, by virtue of section 47a (2) of the Bankruptcy Act, as amended in 1910 (36 Stat. pp. 838, 840, c. 412 [Comp. St. § 9631])? We are of opinion that an affirmative answer must be made to (a) on authority of Bryant v. Swofford, 214 U. S. 279, 29 S. Ct. 614, 53 L. Ed. 997, where the contract, in many respects like the contract here in question, was held to be a conditional sale contract.

[2, 3] When Bryant v. Swofford was decided, the amendment of 1910, to section 47a (2) of the Bankruptcy Act, had not been made; so that, in answering (b) the effect of that amendment, as well as the local law of Illinois, must be considered, because "in bankruptcy the construction and validity of such a contract must be determined by the local laws of the state." Bryant v. Swofford, supra.

In 1915, the state of Illinois adopted the Uniform Sales Act, drafted for and recommended by the American Bar Association. That act has been adopted by 28 states. Section 20 thereof provides:

"Where there is a contract to sell specific goods * * * the seller may, by the terms of the contract * * * reserve the right of possession or property in the goods until certain conditions have been fulfilled. ·The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer. * * *" Cahill's Ill. Stats. 1921, p. 3040.

The Supreme Court of Illinois, in Sherer-Gillett Co. v. Long, 318 Ill. 432, 149 N. E. 225, considered this section as it related to the sale of merchandise not for resale. There A. sold to B. a display counter, to be used in B.'s grocery store, under which contract B. agreed to pay $10 in cash and a like amount each month, title to remain in

A. until full payment. B. sold the counter to C., who had no notice of the reservation of title under the contract or of any right in A. The court held that, under the law of Illinois, such a conditional sale contract was good in favor of A. In doing so, the court noted a radical change worked in the laws of Illinois by the adoption of the Uniform Sales Act, and pointed out that before the passage of the act the great weight of authority in the country was to the effect that one might lawfully deliver the possession of goods to the buyer upon a contract of conditional sale and might assert his title against one purchasing from the buyer, who relied upon the apparent title of the latter. The court then said:

"But in this state we had held that a delivery of personal property to the purchaser upon a contract of conditional sale, with a retention of title in the seller, amounts to constructive fraud, which postpones the right of the real owner in favor of those who have dealt without notice with the conditional vendee, who has been given the indicia of ownership. * * * Whether the Legislature should adopt the companion act, which provides for the recording of contracts of conditional sale, is not for this court to decide. The Uniform Sales Act recognizes the validity of such contracts and specifically provides that no title can be passed by the purchaser of goods under such a contract 'unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.' "

Thus, it is seen, the adoption of the Sales Act in Illinois worked a reversal of the policy of the state and the holdings of the courts as to the effect of conditional sale contracts —making such a contract valid which theretofore amounted to a constructive fraud as to those who had dealt without notice with the conditional vendee. While the authority of that case must, in a large measure, be limited to conditional sale contracts for merchandise not for resale, yet the opinion is so broad in its terms, and some of the matters here involved are necessarily so bound up with the question there decided, that it must be held an authority for the proposition that, in Illinois, as between the parties, all conditional sale contracts are valid, without reference to the question as to whether the goods are for the personal use of the purchaser, or are for consumption, or for resale; in other words, we are of opinion that the Sales Act, adopted by the state of Illinois, as construed by the Sherer-Gillett Case,

be in its own or the dealer's name, as the plow company may elect; and to take such steps and proceedings for the enforcement, collection, securing, renewing, extending, or compromising of any note or account, or any part thereof, as it deems advisable, all at the reasonable cost, charge and expense of the dealer and without affecting or impairing the obligation of the dealer.

Any act of the plow company contrary to the terms and provisions of this contract shall not be deemed a waiver of any of the provisions of this contract, except as to such particular acts.

Nothing herein contained shall release the dealer from making payment as herein agreed.

wholly removed the element of constructive fraud, which theretofore inhered in such contracts under the laws of that state, and that, as intimated by the court in that case, the rights of the vendor under such contracts can only be defeated by establishing some element of estoppel.

Whether such a contract, as between the vendor and a purchaser for value of merchandise, sold under a conditional sale contract, for resale, would have validity, we do not decide; but we are of opinion that the contract, as between the vendor and purchaser, is a valid contract, and the question remains as to whether the trustee in bankruptcy, since the amendment of 1910, has rights that are superior to those of the vendor.

[4] The trustee in bankruptcy is not a purchaser for value. His rights are those of a "creditor holding a lien by legal or equitable proceedings." Such rights must be determined and measured by the laws of Illinois. Section 10 of chapter 77, "Judgments" (Cahill's Ill. Stats. 1921, p. 2106), provides what property may be taken on execution:

"Sec. 10. All and singular the * * * goods and chattels (except such as is by law declared to be exempt) of every person against whom any judgment has been or shall be hereafter obtained in any court of record, for any debt, etc., * * * shall be liable to be sold upon execution."

The provisions of the Justices and Constables Act of Illinois (Hurd's Rev. St. 1921, c. 79) are not broader, so that there cannot be levied or taken upon execution property that is not the property of the defendant in execution. In the Sherer-Gillett Case, the court laid down the proposition that "it is a general, well-established principal that no one can transfer a better title than he has." Neither can there be taken, in Illinois, under an execution, something to which the defendant in execution has no title, unless the execution creditor is aided by some element of estoppel, which in our opinion does not here exist.

In Bailey, Trustee, v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275, the Supreme Court discussed and approved its former holding as to the contract in the Swofford Case, supra, and quoted the following from Everett v. Judson, 228 U. S. 474, 479, 33 S. Ct. 568, 569 (57 L. Ed. 927, 46 L. R. A. [N. S.] 154), the substance of which is also to be found in Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 310, 32 S. Ct. 96 (56 L. Ed. 208):

"We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition."

We are of opinion that the language of the decisions must be held to mean that a conditional sale contract, sufficient under the law of the state where made, without recording, passes no title to the purchaser and is good as against the rights of the trustee in bankruptcy under section 47a (2), because the bankrupt, having no title, can pass none to the trustee. See, also, Century Throwing Co. v. Muller, 197 F. 252, 263 (3d C. C. A.); In re Terrell, 246 F. 743 (8th C. C. A.); In re Seward Dredging Co. (C. C. A.) 242 F. 225.

In the twentieth clause of the contract in question, is this provision: "Cash proceeds shall be turned over to the plow company as and when collected by the dealer and shall be applied on such of the indebtedness of the dealer as the plow company may elect."

[5] We are of opinion that there could be no condition in a sales contract under the Uniform Act of Illinois which would entitle the vendor to have possession of the goods, conditionally sold, after payment therefor, and in any reclamation or other proceeding the trustee would have the right, should he so elect, to pay the balance due the vendor after all the proceeds, paid to the vendor, had been applied to the payment of the contract price for the merchandise.

Appended are authorities from many states dealing with conditional sale contracts.[2]

---

[2] Many courts have dealt with cases under conditional sale contracts. Williston on Sales (2d Ed.), Sec. 329. In the same volume (page 790, note 32) is an extended discussion of cases; none, so far as we have examined them, consider the effect of the Uniform Sales Act, but in many cases local recording, or other statutes, influenced their determination.

In 1924, Judge FitzHenry, in U. S. Elect. Sup. Co. (D. C.) 2 F.(2d) 378, reviewed many cases. Illinois cases cited were decided before the adoption of the Uniform Sales Act in 1915.

In 1926, Judge Lindley in Ritchey v. So. Gem Coal Corp. (D. C.) 12 F.(2d) 605, reviewed many cases.

In Troy Wagon Works Co. v. Hancock (C. C. A.) 152 F. 605, this court decided a case under the Indiana law as it then was affirming Judge Anderson in the District Court on the authority of West v. Fulling, 36 Ind. App. 617, 76 N. E. 325, which case is partially overruled by Andre v. Murray, 179 Ind. 576, 101 N. E. 81, L. R. A. 1917B, 667, Ann. Cas. 1916A, 87.

See Indiana Investment Co. v. Whisman (Ind.

The order of the District Court is reversed, with directions to proceed in accordance with this opinion.

App.) 138 N. E. 512; Southern Finance Co: v. Mercantile Co., 80 Ind. App. 436, 141 N. E. 250; In re Pierce (C. C. A.) 157 F. 757; Century Throwing Co. v. Muller (C. C. A.) 197 F. 252, 263; L. R. A. 1917B, 658.