**BROWN BROS. CO., Limited, v. SMITH BROS. CO., Limited.**

(District Court, E. D. Louisiana. January 17, 1916.)

No. 1806.

1. BANKRUPTCY ⊘210—JURISDICTION OF COURT—LIEN ON FUND.
   A court of bankruptcy has jurisdiction over a claim of a lien on the fund in the possession of the court, and the proper remedy is by ancillary bill filed in the bankruptcy proceedings, not by separate suit.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321–323; Dec. Dig. ⊘210.]

2. BANKRUPTCY ⊘188(3)—LIENS—TRUST EX MALEFICIO.
   Where the bankrupt had transferred to a bank, as collateral security for a note, an account against the buyer of coffee shipped on an open bill of lading, which, together with the invoice, was delivered to the bank, and by it transferred to the buyer, with a request to remit directly to the bank, but the buyer by mistake remitted to the bankrupt, which, then being insolvent converted the money to its own use, a trust ex maleficio was created, which gave the bank a lien on all of the assets of the bankrupt.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 295; Dec. Dig. ⊘188(3).]

3. BANKRUPTCY ⊘188(1)—LIENS—PARTICULAR FUNDS.
   The fact that the bankrupt deposited the particular money received from the buyer in another bank and checked it all out before the trustees were appointed, so that none of it came into their hands, does not defeat the

bank's right to a lien on the other assets, which did come into the trustee's hands, and which were more than sufficient to pay the claim.

[Ed. Note.—For other cases, se Bankruptcy, Cent. Dig. §§ 286–289, 291, 293, 294; Dec. Dig. ☞188(1).]

4. BANKRUPTCY ☞188(1)—LIEN OF TRUSTEES—PROPERTY OF THIRD PERSONS.

Bankr. Act July 1, 1898, c. 541, § 47a, 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), giving the trustees the lien of a creditor holding an unsatisfied judgment, does not defeat the lien of the bank, since such creditor could not attach the property of third persons accidentally coming into the debtor's hands.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286–289, 291, 293, 294; Dec. Dig. ☞188(1).]

5. BANKRUPTCY ☞364—LIEN—ESTOPPEL—RECEIPT OF DIVIDEND.

The receipt, by one having a lien on the funds in the hands of trustees in bankruptcy, of a dividend on a claim including that for which the lien is claimed, does not estop the claimant from thereafter asserting its lien, subject to deduction for any dividend received on the amount of the claim secured by the lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 485, 504; Dec. Dig. ☞364.]

6. CARRIERS ☞56—BILL OF LADING—TRANSFER—COLLATERAL SECURITY.

Where a seller, as collateral security for a note, transferred to the holder the bill of lading and invoice for goods sold, to enable it to receive the purchase price thereof, the account was transferred absolutely; the seller retaining no contingent interest in it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 168; Dec. Dig. ☞56.]

7. CARRIERS ☞58—BILL OF LADING—PLEDGE OF ACCOUNT—NOTICE.

A notice given by a bank, to which the seller had transferred a bill of lading and invoice, to the buyer that remittance was to be made directly to the bank, is substantially the same as notice to the buyer that the account had been pledged.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. ☞58.]

In Bankruptcy. Proceeding by the Brown Bros. Company, Limited, against the Smith Bros. Company, Limited. On exceptions by the trustees to a report of the master granting the petition of the Commercial-Germania Trust & Savings Bank to require the trustees to turn over to it a fund in their possession. Exceptions overruled, and judgment for petitioner.

Merrick, Gensler & Schwarz, of New Orleans, La., for appellants. Charleton R. Beattie, of New Orleans, La., for appellees.

FOSTER, District Judge. In this matter the Commercial-Germania Trust & Savings Bank filed a petition, praying that the trustees turn over to it a fund of $4,153. Issue was joined, and the matter was referred to Hon. William A. Bell, referee, as special master. There was an exception to the jurisdiction of the court, on the theory that petitioner should file a plenary suit, and could not intervene in the bankruptcy proceedings. By waiver and agreement the question of jurisdiction was also submitted to the master. In due course the master filed his report, stating the case and reviewing the law, and found in favor of the petitioner on the question of jurisdiction and

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

also on the merits. The trustees have excepted specifically to his findings, but I do not consider it necessary for the disposition of the case to review the exceptions in detail.

[1] The exception to the jurisdiction is not well taken and was properly overruled. The fund upon which the petitioner claims a lien is in the possession of the court, and it would for that reason alone have jurisdiction, and the proper and most convenient method is by ancillary bill filed in the bankruptcy proceedings.

[2, 3] The facts are substantially as follows: On May 28, 1913, the bankrupt executed a demand note, and as collateral security assigned to the petitioner an account against J. S. Brown & Bro. Mercantile Company, of Denver, Colo., arising from the sale of 263 bags of coffee. The coffee was shipped on an open bill of lading, which, together with the invoice, was turned over to the bank and transferred by it to the purchasers, with request to remit direct to the bank. When the bill became due, Brown & Bro. Company by mistake remitted the amount of the invoice direct to the bankrupt, which was even then insolvent. The bankrupt received the remittance, said nothing about it to the bank, and deposited it in another bank. The same day it was checked out and used to pay the debts of the bankrupt, causing an overdraft in that bank. At the time of bankruptcy there were no funds in that particular bank to the credit of the bankrupt, but, on the contrary, there was a debit. The trustees therefore contend that the fund never came into their possession. It is shown, however, that large assets, of which the cash alone was $177,143.15, more than ample to pay the claim, came into the possession of the trustees after their election.

In my opinion, it is immaterial whether the identical money received from Brown & Bro. Company actually went into the possession of the trustees; the fund was clearly traced into the possession of the bankrupt, and there was an ample amount of other moneys to make it good. The bankrupt, when it parted with the coffee, received the value thereof, and there was no change in amount of assets. When it received payment direct from Brown & Bro. Company, and wrongfully converted the money to its own use, this amount entered into and became part of the assets subsequently passing to the trustees, and a trust ex maleficio was thereby created, by virtue of which the petitioner has a lien on all of the assets of the bankrupt, whether money or other property.

[4] The trustees further contend that by virtue of the amendment of 1910 (section 47a), giving them the lien of a creditor holding an unsatisfied judgment, they are in a superior position to the bankrupt itself with regard to the fund, in the event it should be held they received it into their possession. With regard to this, it is of course clear that a creditor holding an unsatisfied execution could not attach the property of a third person accidentally in the possession of the bankrupt, and therefore it is equally clear that with regard to this fund the trustees take nothing by the amendment.

[5] It is also urged that, as petitioner has received a dividend as a creditor on a claim including this debt, with other accounts, and

the sum has been paid out of assets including the fund herein claimed, it is estopped to set up any right or title to the said fund. The trustees have lost nothing by the other claim. Petitioner should not be estopped by any action on its part in receiving dividends as a creditor, though of course there should be a deduction of any dividend based on the amount herein claimed.

[6, 7] The trustees make the point that petitioner sets out that it purchased the invoice, while the facts show that the account was pledged as collateral security of a note. They also say that as a pledge it is technically defective for want of notice of the pledge to the debtor. Under the facts of the case, there could be no doubt that the account was transferred to the bank absolutely and irrevocably, the bankrupt retained no contingent interest in it, and it was not contemplated the note would be taken up, except by the remittance from the debtor. The notice given to the debtor that the remittance was to be made direct to the bank was substantially the same as notifying it that the account had been pledged.

The exceptions to the master's report will be overruled, and there will be judgment in favor of the petitioner in accordance with these views.