JAMES BRADFORD COMPANY,

*vs.* ·

UNITED LEATHER COMPANY.

In the Matter of the Petition of SECURITY TRUST and SAFE DEPOSIT COMPANY.

*New Castle, April* 19, 1916.

Where a banking company agreed to give to a leather company a line of credit, loaning to it money from time to time and taking notes payable on demand, secured by the borrower's assignment of invoices for leather sold and shipped to its factors, etc., and it was afterwards agreed that the money received from the consignees should be credited, not on the particular notes, but on the borrower's indebtedness generally, and the borrower, before the appointment of its receiver, had taken back from its factors a number of boxes of leather covered by the invoices assigned to the banking company, which boxes had been marked as the property of the banking company, that company had a lien or claim to the proceeds of such leather enforceable in equity against the borrower and against its receiver and its other creditors, who in such case stood in the position of volunteers.

Such transaction did not amount to a pledge.

Receivers of an insolvent corporation cannot assert in behalf of its general creditors a claim to the proceeds of the sale of property which the corporation could not have asserted in a contest exclusively between it and the creditor.

A receiver appointed by the Court of Chancery to wind up the affairs of an insolvent company is like a receiver in bankruptcy, in that he takes the property as a purchaser with notice of all outstanding rights and equities.

· A specific equitable lien has preference over a subsequent legal lien.

Where a banking company in good faith loaned a leather company money secured by assignments of invoices to its factors, etc., payable, not on the particular notes, but on the general indebtedness, the allowance of an equitable lien against the proceeds of the sale of leather returned from factors, did not deprive any other creditor of any right, and he had no right to object.

STATEMENT OF THE CASE. At the time receivers were appointed by this court for the United Leather Company, based on its insolvency, there were on the premises of the company twelve boxes containing leather, each box being marked "Property of Security Trust and Safe Deposit Company." There being a dispute as to ownership of the leather, it was not appraised as part of the assets of the company; but afterwards by agreement of the trust company and the receivers the Chancellor made an order for the sale of the leather, all rights to the leather to be transferred to the proceeds of sale. Pursuant to the order the receivers sold the leather for $5,810.60, and by its petition the Security Trust and Safe Deposit Company claims all of the money, the receivers by their answer thereto also claiming it.

From the testimony produced at the hearing of the petition it was shown that the leather in question was made by the United Leather Company and sent at various times to two of its factors, or agents, one in London and the other in Cincinnati, to be by them sold on commission, and later, and before the receivers were appointed, the unsold leather was returned to the principal and constituted the contents of the twelve boxes, five from the London factor and seven from the Cincinnati factor. It was also shown that the Security Trust and Safe Deposit Company in 1912 agreed to give to the United Leather Company a line of credit not to exceed $40,000, loaning to it money from time to time, for which notes were given payable on demand, the borrower giving as collateral security assignments of the invoices for leather sold and leather shipped to factors. A large number of such accounts were at various times so assigned as collateral for the several notes (about twenty in all) made at different times. With each note was a list of consignees of leather and to the list was added an assignment of the several invoices as collateral for the particular loan, stating the date and amount, and that it was a demand loan. As the moneys were received from the consignees for the leather sold they were paid to the Security Trust and Safe Deposit Company on account of the advances made by it on the leather. At the outset these moneys were credited as

payments on the particular notes for the payment of which they were severally and respectively assigned. But later it was found difficult to do so, and it was verbally agreed that the moneys received from the consignees should be credited generally on the indebtedness of the United Leather Company to the Security Trust and Safe Deposit Company and be applied to the payment of the oldest note and the balance applied to the later ones, though all the notes were payable on demand. In 1914, long before the appointment of the receivers, the United Leather Company received back from the two factors the leather in question, being leather which had been shipped to them at various times, and represented by several invoices assigned with other invoices to other persons as collateral for notes. The leather was the unsold leather belonging to the United Leather Company in the hands of the two factors. By direction of the president of the United Leather Company, when and as received, the boxes were marked as being the property of the Security Trust and Safe Deposit Company, and on each of the invoices for the leather returned a notation was made that it was an invoice of leather assigned to the Security Trust and Safe Deposit Company. It was explained by the president of the United Leather Company that the leather and the invoices therefor were so marked because it was considered that the Security Trust and Safe Deposit Company had a right to the leather, by having made advances on account thereof, and when returned unsold its right therein should be preserved, the leather standing in place of the invoice therefor which had been assigned to the Security Trust and Safe Deposit Company.

Testimony was taken orally before the Chancellor, and the cause was argued by counsel.

*Benjamin Nields*, for the petitioner.
*Richard S. Rodney*, for the receivers.
*Charles W. Smith*, for creditors.

THE CHANCELLOR. The question is as to the ownership of the twelve boxes of leather, or rather of the proceeds of the

sale thereof.   It is claimed by the Security Trust and Safe
Deposit Company that the assignment of the invoices for the
leather consigned to the two factors transferred to it the title
to the leather itself.   For the receivers it is urged, however,
that an invoice is not an evidence of title, such as is a bill of
lading or warehouse receipt, for the former is but a list of goods
shipped with the value, price, description and the like, while
the latter are receipts of a third person showing possession of
the goods.   Therefore, it is said, there is no symbolical delivery
of the property by an assignment of an invoice, but at most
a transfer of the right to receive the proceeds of the sale of the
things stated in the invoice.   If the consignment had been to a
purchaser and not to a factor, the contention would be sound.
Was it not the intention of the borrower and lender that the
borrower's leather, or the proceeds of sale thereof by its factors,
should be the security for the loan?   The title to the leather was
always in the borrower.   When, then, it came back to the pos-
session of the borrower it was in its hands still impressed with
the same agreement, viz:  That when sold the proceeds should
be applied to the indebtedness of the United Leather Company
to the Security Trust and Safe Deposit Company.   As against
the United Leather Company the Security Trust and Safe De-
posit Company certainly had an equitable lien, or claim, to the
proceeds of sale of the leather.   The transaction probably did
not amount to a pledge, which required delivery to the pledgee,
though the marking of the boxes of leather as the property of
the Security Trust and Safe Deposit Company may have con-
stituted a sufficient delivery and a definite negation of the
ostensible ownership in the United Leather Company as would
make it a valid pledge under the principles so ably discussed
by Judge Bradford in the case of *Philadelphia Warehouse Co. v.
Winchester, et al., (C. C.)* 156 *Fed.* 600.   But though there be not
a pledge, still by agreement on sufficient consideration, and
without delivery, a lien on property may be created which will
be enforceable in equity as between the parties to the agree-
ment and against volunteers, or purchasers or encumbrancers
with notice.   *3 Pomeroy's Equity Jurisprudence, par.* 1235; *2
Story's Equity Jurisprudence,* §1231; 25 *Cyc.* 665; *Ketchum v.*

*St. Louis,* 101 *U. S.* 306; *Walker v. Brown,* 165 *U. S.* 654, 666. In this last case the court said:

"To dedicate property to a particular purpose, to provide that a specified creditor and that creditor alone shall be authorized to seek payment of his debt from the property or its value, is unmistakably to create an equitable lien."

The form of the agreement is immaterial, "if the intent appears to make any identified property a security for the fulfillment of an obligation." 3 *Pomeroy's Equity Jurisprudence,* §1237.

Here there was an agreement in consideration of a loan of money that the creditor, and it alone, should be authorized to seek payment of the debt from the leather, or its value, and so there was an equitable lien enforceable against the company itself, or its receivers and its creditors, who are volunteers. If an invoice of goods shipped to an agent or factor of the shipper for sale on commission be assigned as collateral security for a loan, then there is an equitable lien created in favor of the lender, which entitled him to the proceeds of sale of the goods when sold.

There being, then, an equitable right, this court in this cause will enforce it, for the receivers cannot assert in behalf of the general creditors a claim to the proceeds of the sale of property which the insolvent corporation could not have asserted in a contest exclusively between it and the creditor. This has been well established as to assignees or trustees in bankruptcy, and the following cases were cited on the point: *Hauselt v. Harrison,* 105 *U. S.* 401, 406; *Yeatman v. Savings Institution,* 95 *U. S.* 764; *First National Bank v. Pennsylvania Trust Co.,* 124 *Fed.* 968, 60 *C. C. A.* 100. A receiver appointed by a court of chancery to wind up the affairs of an insolvent company is like a receiver in bankruptcy, in that it takes the property of the company as a purchaser from the company with notice of all outstanding rights and equities. Inasmuch, then, as the receivers could acquire no greater right than the United Leather Company had to the proceeds of the leather whenever and however sold, it seems to be a simple proposition that the

lender should be paid from the proceeds of the security given for his debt now that it has been converted into money.

It is not necessary to consider the rights of a creditor of the United Leather Company having a legal lien on the leather as against the holder of the equitable lien, for there is no such legal lien. But it has been held that a specific equitable lien has preference over a subsequent legal lien. *25 Cyc. 679; Dwight v. Newell, 3 N. Y. 185.*

There is in this cause no fraud on the rights of creditors of the United Leather Company, for it was a bona fide transaction throughout, the Security Trust and Safe Deposit Company lending money on certain property as collateral security, and the arrangement was a step in securing to the lender repayment by giving it a preference of payment from the things constituting the security. No other creditor of the borrower has any right to object, nor has he been deprived of any right or been put in a worse position because of the transaction between the United Leather Company and the Security Trust and Safe Deposit Company than he would have been if they had not made the agreement.

In my opinion, then, the Security Trust and Safe Deposit Company having loaned to the United Leather Company money on the faith of the proceeds of sale of the leather consigned by the United Leather Company to its own factors, is entitled to the proceeds of sale thereof as against the receivers of the borrowing company, who represent the company and its creditors and stockholders.

Let an order be entered accordingly.