Sylalbus.

Myra McClemy *vs.* John Frank Brown, Theodore A. Veasey and Mary A. Veasey.

1. Replevin—Nature and Grounds of Action.

Replevin lies for the possession of goods and chattels unlawfully detained from the owner, or person entitled to the possession, and its object is the recovery of the property itself with damages for the taking and detention thereof, or the recovery of a sum of money equivalent to the value of the property.

2. Replevin—Evidence—Admissibility.

In replevin for an automobile sold to defendants by one who purchased it with funds furnished by plaintiff and to whom plaintiff was engaged to be married, the jury, in determining whether plaintiff gave such person the money to buy the car for plaintiff or for himself, should consider all the evidence in the case, including the receipts for payments and insurance policy issued in the name of such third person, and also the relation between such person and plaintiff when the car was purchased.

3. Replevin—Right of Action—Ownership of Property.

In replevin for an automobile purchased by a third person with funds furnished by plaintiff, and sold by such third person to defendants, if plaintiff gave the money to the third person to buy the car for himself, the verdict should be for defendants.

4. Replevin—Right of Action—Ownership of Property.

In replevin for an automobile purchased by a third person with funds furnished by plaintiff and by him sold to defendants, if the third person, acting as agent of plaintiff, received the money from her to buy the car for her, and he bought it unconditionally, whether he applied all the money she gave him or not in payment of the car, the ownership and right of possession immediately vested in plaintiff, and the verdict should be in her favor.

5. Replevin—Right of Action—Existence of Relation—Termination.

Where one received money as agent with which to buy an automobile for the principal, and he did so, the agency ceased, and custody of the car thereafter by the agent with permission of the principal was not inconsistent with the principal's possession.

6. Bailment—Loan for Temporary Use.

When one loans property for temporary use, the lender does not part with possession, but only with the custody for the time being, and the lending constitutes one of the forms of bailment.

7. Bailment—Conversion by Bailee—Effect.

One who loans property for temporary use does not part with the possession, but intrusts its custody to the bailee, and if the latter embezzles or fraudulently converts the property to his own use, the title of the owner is not divested.

*(October 12, 1916.)*

JUDGES BOYCE and RICE sitting.

*Charles W. Cullen* of Georgetown, and *Henry F. Waters* of the Maryland Bar, for plaintiff.

*White* and *Tunnell* for defendants.

Superior Court, Sussex County, October Term, 1916.

ACTION OF REPLEVIN, No. 2, February Term, 1915.

Action by Myra McClemy against John Frank Brown and others. Verdict for plaintiff.

Action brought by Myra McClemy against John Frank Brown, Theodore A. Veasey and Mary A. Veasey for the recovery of the possession of a certain automobile, the property of the plaintiff, she claiming that one A., while having the temporary use of the automobile, before the writ of replevin in this case was issued, unlawfully sold the same to the defendants. Verdict for plaintiff.

The declaration is in the detinet, that is, the plaintiff alleges that the defendants still detain the property.

It appears from the return of the sheriff, endorsed on the writ, that he replevied the automobile in question, and that he left it in the possession of the defendants, upon their claim of property therein, they giving a property bond for the same.

The plaintiff claimed that at the time of, and prior to, the sale of the car to the defendants, she was living on her farm near Princess Anne, Maryland, and that A., who was a civil engineer engaged in building a state road between Princess Anne and Salisbury, was boarding with her; that they were engaged and expected to be married in the near future; that A. suggested that she purchase an automobile in which they would take their wedding trip, and have the use of it in the meantime; that, complying with his suggestion, she drew from the bank eleven hundred dollars and gave it to him to purchase for her a five-passenger Overland touring car; that A. accepted the money for that purpose and subsequently purchased the car for her from one P., a dealer in Salisbury, and brought it to her home; that thereafter, by her permis-

sion A. used the car in going to, from and over the road he was constructing, as well as in taking her driving; that the car was kept in her barn, with the exception of one night, when A. had driven over to Crisfield, and, meeting with some accident, he did not return it until the next day; that on the eighth of October, 1914, A. borrowed the car from her for the purpose of going to Salisbury and bringing his mother out to see plaintiff so that she might contradict the rumor that had reached her that A. had a wife living and two children; that he brought a woman, whom he said was his mother, to see plaintiff, on the ninth, who denied that A. was a married man; that A.'s superior, on the road, knowing A. to be a married man, and hearing that we were to be married, came to Salisbury to ascertain the correctness of the fact; that A. learning of this, after taking his mother back to Salisbury on the ninth, sold the car that night for four hundred and ninety dollars, to the defendants, at Delmar, who were the sub-agents of said P., and left the state; that the plaintiff thereupon had a warrant issued for the arrest of A., but he had not been apprehended. The defense was that the defendants were innocent purchasers for value; that the car was bought from P. by A. partly for cash and partly on the credit of A., and that there was still due and unpaid a balance of two hundred dollars; that P. did not know the plaintiff in the transaction; that A. kept the car in P.'s garage every night but one from the time he purchased it until it was sold to the defendants, and used and treated it in all respects as his own property, taking out a license, and having the car insured in his own name.

It appeared from the evidence that A. was a stranger to the defendants and that while he claimed to be the owner of the car and exhibited receipts to them for payments made to P. on account of the car, as well as the policy of insurance in his name, they did not make inquiry of P., or any one else concerning A.'s ownership.

## PLAINTIFF'S PRAYERS.

1. If the owner loses his property, or is robbed of it, or it is sold or pledged without his consent by one who has only a tem-

porary right to its use by hiring, or otherwise, or a qualified possession of it for a specified purpose, as for transportation, or for work to be performed on it, the owner can follow and reclaim it in the hands of any person, however innocent.  *Saltus & Saltus v. Everett*, 20 *Wend.* 282, 32 *Am. Dec.* 541.

2.  It is a rule of law, equally well known and established, that the possession of the true owner cannot be divested by a tortious taking.  So when goods are taken from the true owner, by means of fraud, one cannot sell goods of which he wrongfully obtained possession.  *Wilkins Case*, 1 *Leach.* 522.  See, also, *Creighton v. Sanders*, 89 *Ill.* 543; *Prime v. Cobb*, 63 *Me.* 200; *Bearce v. Bowker*, 115 *Mass.* 129; *Kock v. Branch*, 44 *Mo.* 542, 100 *Am. Dec.* 324; *McGoldrick v. Willits*, 52 *N. Y.* 612; *Ruckman v. Decker*, 23 *N. J. Eq.* 283; *Ventress v. Smith*, 35 *U. S.* (10 *Pet.*) 161, 9 *L. Ed.* 382.

## DEFENDANTS' PRAYERS.

1.  That the court charge the jury to render a verdict in favor of the defendants.

2.  It is a general rule of law that a principal may recover his own property or its value from third persons where it has been transferred or disposed of by an agent contrary to his instructions, or duty, unless the principal has invested the agent with the *indicia* of title to the property, or authorized him to make such disposition, and the third party be a *bona fide* purchaser for value and without notice; when redress will be denied for the reason that where one of two innocent parties must suffer, it must be the one who made the commission of the wrong possible.  1 *Am. & Eng. Enc. of Law*, 1172; 31 *Cyc.* 1607.

3.  If a person dealing with an agent intrusted with the possession of property does not know or have reasonable ground to believe that he is an agent, he is put in the same position as if the agent was the real owner.

It is not incumbent upon a person to whom one comes to sell an article without any information of agency or anything to raise any doubt in his mind as to agency to make inquiry.  He has a right to presume that the person who deals with him representing

the property to be his own is the owner. *Connally v. McConnell & Robinson*, 1 *Pennewill*, 133, 39 *Atl.* 773.

Boyce, J., charging the jury:

This is an action of replevin brought by Myra McClemy against John Frank Brown, Theodore A. Veasey and Mary A. Veasey to recover the possession or value of an automobile which the plaintiff claims the defendants unlawfully detained from her.

The sheriff, under the writ of replevin issued in this case, replevied the automobile in question, but, upon a claim of property, the defendants giving a property bond, he left it in their possession.

[1] The action of replevin lies for the possession of goods and chattels unlawfully detained from the owner, or the person entitled to the possession thereof. The primary object of the action is the recovery of the property itself with damages for the taking and detention thereof. Secondarily and usually the object is the recovery of a sum of money equivalent to the value of the property.

The first question for you to determine, under the evidence, is, who, as between the parties to this action, was entitled to the possession of the automobile, at the time of the issuance of the writ of replevin, on October fifteenth, A. D. 1914?

The plaintiff claims that she gave eleven hundred dollars to one Harold C. Abbott, who, at the time, was boarding with her and to whom she was engaged to marry, to buy for her a five-passenger Overland touring car; that Abbott accepted the money, bought the car and delivered it to her. It is conceded that Abbott bought the car of one Perdue, a dealer in Salisbury, Maryland, for the price or sum of eleven hundred dollars; that Abbott made a deposit or part payment on the car of the sum of one hundred dollars, when he ordered it; that he paid the further sum of five hundred dollars at or about the time the car was delivered to him, and soon thereafter paid the further sum of three hundred dollars, leaving a balance remaining unpaid of the sum of two hundred dollars. It is not denied that the seller did not know the plaintiff in the transaction, or that credit was given to Abbott. It is not

17

controverted that Abbott took out the license for the car, and had it insured, in his own name.

From all the evidence in this case, did the plaintiff give the money to Abbott to buy the car for her, or for himself?

[2, 3]   In determining this question, you should consider all the evidence in this case, including the receipts for the payments made and the insurance policy, also the relation existing between the plaintiff and Abbott at the time the car was purchased.   If you find that the plaintiff gave the money to Abbott to buy the car for himself, then your verdict should be for the defendants.

[4]   If on the other hand, you find that Abbott, acting as the agent of the plaintiff, received the money from her for the purpose of buying the car for her and that he bought the car unconditionally, whether he applied all the money, which she gave him, or not, in payment of the car, the ownership and right of possession of the car immediately vested in the plaintiff.

The court is asked to give you binding instructions to find for the defendants.   It is the opinion of the court that the case should be submitted to you for your determination under instructions on the law applicable to the facts of the case.

The court is also requested to instruct you that:

"A principal may recover his own property, or its value from third persons where it has been transferred, or disposed of by an agent contrary to his instructions, or duty, unless the principal has invested the agent with the indicia of title to the property, or authorized him to make such disposition, and the third party be a bona fide purchaser for value and without notice; when redress will be denied for the reason that where one of two innocent parties must suffer, it must be the one who made the commission of the wrong possible."

"It is not incumbent upon a person to whom one comes to sell an article, without any information of agency or anything to raise any doubt in his mind as to agency, to make inquiry.   He has a right to presume that the person dealing with him, representing the property to be his own, is the owner."   *Connally v. McConnell & Robinson*, 1 *Pennewill*, 133, 39 *Atl.* 773.

[5]   We cannot so charge you because there is in this case no claim whatever that there was any relation of agency between the plaintiff and Abbott, beyond the purchase of the car and none for the sale of the car.   In the case just cited, it was recognized by this court that the rule laid down in that case is different where

29 Del.]    McClemy vs. Brown, et al.    259

Charge—Verdict.

the possession of the vendor is tortious. In that case, unlike this, it was shown that the plaintiff intrusted to E. not only the possession of the property but also a paper purporting to guarantee him as to its quality. It is denied in this case that the plaintiff intrusted the possession of the automobile to Abbott for the purpose of sale, or knowingly with any *indicia* of title to the property.

If Abbott, as agent of the plaintiff, received from her money with which to buy the car in question for her, and he did so, then the agency ceased. If afterwards, Abbott by permission of the plaintiff used the car, her possession was not inconsistent with his custody.

[6, 7] When one lends property to another for temporary use, the former does not part with the possession, but only the custody of the property for the time being. The lending of property to another for use without pay constitutes one of the several kinds of bailment. The lender does not part with the possession, but intrusts the custody of the property to his bailee. If the latter embezzles or fraudulently converts the property to his own use, such conversion does not divest the owner of his title in the property; for it is a well-recognized rule of law, that if personal property is sold without the consent of the owner by one who has only a temporary right to its use by lending, or otherwise, or a qualified possession of it for a specific purpose, as for personal use, the owner can follow and reclaim it in the hands of any person, however innocent. The possession of the owner cannot be divested by a tortious or fraudulent conversion, as by an unlawful sale to another.

If you find that the car was the property of the plaintiff, in the custody of Abbott with a temporary right to use it, and that he fraudulently sold it to the defendants, then your verdict should be for the plaintiff for such a sum as you find was the value of the car at the time the writ of replevin issued.

If you find that the plaintiff gave money to Abbott with which to buy the car for himself, then your verdict should be for the defendants.

Your verdict should be for that party in whose favor there is the greater weight or preponderance of the evidence.

Verdict for plaintiff.