## In re FORD-RENNIE LEATHER CO. Petition of SCHMOLL FILS & CO., Inc., Petition of DOHERR GRIMM & CO., Inc.

(District Court, D. Delaware. October 30, 1924.)

No. 509.

**1. Sales** ⊕467—**Trust receipt held to retain title in seller.**

Where seller of merchandise exacted from purchaser, a manufacturer, trust receipts binding buyer to hold goods or their proceeds as seller's property until purchase price was paid, the legal title as between buyer and seller remained in seller.

**2. Chattel mortgages** ⊕63—**Trust receipt reserving title in vendor until payment of purchase price held not "chattel mortgage."**

A trust receipt exacted from buyer by seller of goods intended to be manufactured, reserving title in seller to property or its proceeds until payment of purchase price, pursuant to prior memorandum contract of sale, held not a "chattel mortgage" within Rev. Code Del. 1915, § 2855, making affidavit essential to its validity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Chattel Mortgage.

**3. Bankruptcy** ⊕143(1) — **Local law determines whether property in hands of bankrupt was subject to levy or lien by creditors.**

Under Bankruptcy Act, § 70 (Comp: St. § 9654), vesting in trustee property which prior to the petition might have been levied upon and sold under judicial process against bankrupt, whether such property could be so levied upon and sold must be determined by the local law of the state.

**4. Bankruptcy** ⊕184(1)—**Property held by bankruptcy under trust receipt retaining title in seller until payment of purchase money not vested in trustee.**

Under Bankruptcy Act, § 70 (Comp. St. § 9654), and amendment of 1910 embodied in section 47a, subd. 2 (Comp. St. § 9631), and statutes of Delaware, property purchased by bankrupt for manufacture under contract and trust receipt reserving title in seller did not vest in trustee, unless by reason of Conditional Sales Act (Laws Del. 1919, c. 192).

**5. Bankruptcy** ⊕143(1)—**Title to property under conditions rendering it immune to liens by creditors not vested in bankrupt's trustee.**

Amendment of 1910 to Bankruptcy Act embodied in section 47a, subd. 2 (Comp. St. § 9631), does not vest in trustee rights, remedies, and powers over property which, though coming into custody of bankruptcy court, was in possession of bankrupt under such circumstances and conditions that prior to his bankruptcy it could not have been impressed with lien by creditor of bankrupt.

**6. Bankruptcy** ⊕140(1)—**Failure of seller to file memorandum of sale contract with trust receipt under conditional sale act held to vest title in trustee.**

Where property was held by bankrupt under trust receipt pursuant to prior contract of sale providing therefor, such trust receipt was substantially a conditional sale contract, and memorandum of sale was material part thereof, and under Laws Del. 1919. c. 192, when it was not filed, trustee in bankruptcy acquired title as against the seller; he being deemed a lienholder without notice of petitioner's rights, by virtue of Bankruptcy Act, § 47a, subd. 2 (Comp. St. § 9631).

**7. Bankruptcy** ⊕140(1)—**Seller under trust receipt held entitled to reclaim property and proceeds from trustee, notwithstanding noncompliance with Uniform Conditional Sales Act.**

Though sale contract and trust receipt were not filed as required by Uniform Conditional Sales Act, Laws Del. 1919, c. 192, where, before bankruptcy proceedings, receiver, under Rev. Code Del. 1915, § 3883, took possession of property and proceeds, and seller petitioned for their return, hearing was had, and matter taken under advisement, seller was entitled to claim property as against trustee, since actual return by receiver, even if within four months prior to bankruptcy, would not have created voidable preference.

In Bankruptcy. In the matter of the bankruptcy of the Ford-Rennie Leather Company. Separate petitions by Schmoll, Fils & Co., Inc., and Doherr, Grimm & Co., seeking to reclaim property from trustee. Petitions granted.

William S. Hilles, of Wilmington, Del., for certain general creditors.

E. E. Berl (of Ward, Gray & Neary), of Wilmington, Del., for trustee.

James I. Boyce, of Wilmington, Del., for Schmoll, Fils & Co., Inc.

Caleb S. Layton (of Marvel, Marvel, Layton & Hughes), of Wilmington, Del., for Doherr, Grimm & Co., Inc.

MORRIS, District Judge. Ford-Rennie Leather Company was adjudicated a bankrupt by this court on July 31, 1924. By separate petitions filed in the bankruptcy cause Schmoll Fils & Co., Inc., and Doherr, Grimm & Co., Inc., now seek to reclaim and obtain from the trustee in bankruptcy certain skins, or the proceeds thereof, delivered by the petitioners, respectively, to the bankrupt under terms and conditions set out in whole or in part in "trust receipts" delivered by the bankrupt to the petitioners. The trustee in opposing the petitions contends that the petitioners are without title to the skins, and that, if, in fact, they have title, they are not in a position successfully to maintain it against the trustee. In support of these ultimate contentions the trustee asserts: (1) That the right of the petitioners in, to, or against the skins is not that of

legal ownership and title, but is that arising under an invalid and ineffective chattel mortgage; (2) that, if the petitioners have the legal title to the skins, their title, by reason of the provisions of the Bankruptcy Act and the doctrine of ostensible ownership, cannot prevail against the trustee; and (3) that, if under the terms of the contracts between the parties the title to the skins was reserved to the petitioners, the contracts were contracts of conditional sale, and the provisions therein reserving title are void as against the trustee in that as to Schmoll Fils & Co. the whole of the contract was not recorded, as required by chapter 192, volume 30, Laws of Delaware, and as to Doherr, Grimm & Co., no part of the contract was filed for record. The trustee has, however, urged but little the last-stated point. He has, on the contrary, stressed the contention that the proper field for use of the trust receipt is narrow; that it was not here employed in that field; and that when not so employed it is invalid as against a trustee in bankruptcy for the other reasons urged by him.

In the case at bar both petitioners were dealers in hides and skins. The bankrupt was a leather manufacturer. On December 5, 1923, Schmoll Fils & Co., whose petition will be first considered, was the owner of certain skins with the acquisition of which by the petitioner the bankrupt had been in no wise concerned. With respect to those skins the petitioner and the bankrupt entered into an arrangement as follows:

"New York, December 5, 1923.

"Ford-Rennie Leather Co., Dupont Bldg., Wilmington, Del.—Dear Sirs: We beg to confirm our sale to you as follows:

"Quantity: About (5 per cent. more or less) 38 bales of Cordoba goatskins, of which 17 bales Mataderos, 17 bales Campos, 4 bales Desechos, at 39 cents per pound for the Mataderos and Campos; Desechos at two-thirds price. Shrinkage guaranteed not to exceed 3%.

"Insurance: Ex warehouse New York.

"Shipment: Prompt shipment from New York.

"Terms: Payment 90 days' draft upon arrival of goods, interest for buyer's account.

"Remarks: Sellers will either invoice these goods immediately, in which case buyers will give a trust receipt with sellers' option of filing same, or sellers will ship the goods on memorandum, and final invoice will be rendered only at the maturity of the draft when same will be paid.

"The fulfillment of this contract by the sellers is subject to wars, revolutions, blockades, strikes, acts of Providence, prohibition of export or import of the merchandise sold, delays and/or withdrawals of steamers, all cases of force majeure and consequences thereof, and any other contingency over which the sellers have no control.

"Goods actually shipped, but lost, destroyed, or damaged in course of transportation, shall be deemed delivered under this contract. Hides and/or skins to be of the usual quality and assortment of their kind. No claims shall be valid unless made in writing within two weeks after the goods are delivered. Any controversy or claim made in time under this contract shall be settled amicably or by arbitration in New York City (unless otherwise stated). No claim for difference in kind or quality shall be valid unless at least 90 per cent. of the goods are in original condition and packing. In no case can the goods be left for the sellers' account.

"Goods arrived on dock are deemed delivered to buyers, and sellers may substitute delivery order in place of domestic shipping documents for all purposes of this contract.

"No warranties of any kind (either expressed or implied) form part of this contract, unless specifically set forth in writing. Unless otherwise stated, any sales tax hereafter imposed by the United States government shall be added to the above price.

"Duty, if any, for buyer's account. (This includes both import and export duty.)

"Term c. i. f. does not include war risk unless so stated.

"Each shipment to be considered a separate contract.

"Yours very truly,
"Schmoll Fils & Co., Inc.
"Accepted: Ford-Rennie Leather Co.,
"[Signed] James I. Ford,
"Treas., Buyer."

Three days later Schmoll Fils & Co. wrote the bankrupt thus:

"We understand these skins have arrived at your tannery, and in order that you could take prompt delivery we surrendered bill of lading to the New York agents of the B. & O. Railroad, with instructions to wire release of this merchandise to the agent at Wilmington. * * * Draft and trust receipt will follow by next mail."

On December 10 Schmoll Fils & Co. again wrote the bankrupt as follows:

"New York, December 10, 1923.

"Messrs. Ford-Rennie Leather Co., Dupont Building, Wilmington, Del.—Gentle-

men: Inclosed is draft for $13,870.09 maturing March 7th, covering invoice of December 4th, of 38 bales Cordoba goatskins, plus interest and revenue stamp charges as per the inclosed statement.

"We also inclose trust receipt covering this merchandise. Please accept our draft and sign the trust receipt, returning it to us as promptly as possible.

"Very truly yours,

"Schmoll Fils & Co., Inc.,

"[Signed] P. L. Fox, Cashier."

The draft was accepted and the trust receipt signed by the bankrupt, and both were returned to Schmoll Fils & Co. The trust receipt is in the following language:

"Received from Schmoll Fils & Co., Inc., New York, the merchandise specified in the bill of lading, the property of Schmoll Fils & Co., Inc., viz.: 20,002 twenty thousand two Cordoba goatskins, marks: S Argentina 365–367/370 372–384/394 418/421–423/425 427/429–431/435 437/438 447/450, pledged under the terms of their acceptance dated December 10, 1923, for ($13,870.09) thirteen thousand eight hundred seventy dollars nine cents issued by us for our account. In consideration of the delivery of said merchandise as the property of Schmoll Fils & Co., Inc. (with liberty only to manufacture), until all bills of exchange, trade acceptances or notes given by us to the said Schmoll Fils & Co., Inc., for the purchase price thereof shall have been paid.

"We agree to keep said property insured at its full value against loss or damage of any nature, by fire, or otherwise, insurance payable in case of loss to the said Schmoll Fils & Co., Inc., for its account with the understanding that the said Schmoll Fils & Co., Inc., is not to be chargeable with any expenses incurred thereon.

"Schmoll Fils & Co., Inc., may cancel this trust, and take possession of said goods wherever the said goods may then be found, in the event of any suspension or failure, or bankruptcy, or assignment for the benefit of creditors on our part, or of the nonpayment at maturity of any obligation or acceptances made by us for or in connection with said merchandise.

"The intention of this agreement is to protect and preserve unimpaired the ownership and right of the said Schmoll Fils & Co., Inc., in and to said merchandise in whatever form or condition it may be and to give said Schmoll Fils & Co., Inc., all rights in respect to said merchandise until the purchase price thereof has been fully paid. 38 bales Cordoba goatskins lot 19, stamped Z 3.

Dated: New York, December 11, 1923.

"Ford-Rennie. Leather Co.,

"James I. Ford, Treasurer."

Many of the skins came into the possession of the trustee in bankruptcy. Others were destroyed by fire before the adjudication in bankruptcy, and the bankrupt received the insurance money therefor. The draft was not paid in whole or in part by the bankrupt. The petitioner seeks to have the remaining skins returned to it and the insurance money received by the bankrupt for the burned skins paid to it. The trust receipt was recorded in the office designated by the statute of the state of Delaware for the recording of conditional sales contracts and chattel mortgages. The memorandum of December 5 was not recorded.

Is the title to the remaining skins in the petitioner or in the trustee in bankruptcy? One of the things essential to be considered in this connection is the legal nature and effect of a trust receipt. The most comprehensive discussion of the trust receipt that I have found or to which I have been referred is the monograph of Mr. Karl T. Frederick published in the issues of the Columbia Law Review for May and June, 1922. Mr. Frederick says that in the typical case the trust receipt is used when R., an importer, desiring to obtain from abroad merchandise for manufacture or sale in this country, requests his bank to issue a letter of credit authorizing A. B. & Co., from whom the goods are to be purchased abroad, to draw their drafts upon the bank for the cost of the goods to be supplied by them. The credit is delivered to the importer, or sent direct to A. B. & Co., or transmitted to them through an institution located near them. In consideration of the issue of the credit the importer agrees to repay to the bank all amounts that may be paid out by it under the credit, together with interest and commissions. He likewise agrees that the bank shall be and remain the owner of the merchandise so purchased and of all documents of title thereto and of the proceeds thereof until the payment to the bank as agreed to shall have been made, and that upon receipt from the bank of the possession of the merchandise he will deliver to the bank a trust receipt. A. B. & Co. ship the goods, taking the bill of lading to the order of the bank "notify R." The seller draws its draft upon the bank for the amount of the purchase price of the goods, attaches to it the bill of lading and other necessary pa-

pers, and forwards the draft through banking channels for payment. In due course the draft is presented to the bank upon which it was drawn and is paid. The goods arrive and the importer is notified. He in turn so advises the bank. As the importer has not paid the bank the amount of its disbursements, interest, and commissions, and is not then prepared to do so, the bank delivers to him the bill of lading and other shipping documents upon his signing a trust receipt identical with or more or less similar to that hereinbefore set out. Mr. Frederick further says:

" * * * It is obvious that the trust receipt might equally well be used in connection with a domestic transaction, such, for example, as a shipment of automobiles from a manufacturer in Detroit to a customer in Philadelphia. The railway bill of lading may be taken or indorsed to the order of a bank in Philadelphia, which has agreed to honor drafts for the purchase price, and, upon arrival, the automobiles may be turned over for sale on the security of a trust receipt given to the bank by the customer. Such use of the trust receipt is by no means infrequent, but its most extensive use is in connection with importations from abroad."

See Commercial Bank v. Canal Bank, 239 U. S. 520, 523, 524, 36 S. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25; In re A. E. Fountain, Inc. (C. C. A. 2) 282 F. 816. '

The legal relations existing between a person receiving possession of goods under a trust receipt or his trustee in bankruptcy and the owner who delivers the possession has been considered by the courts numerous times. Many of the cases are mentioned and reviewed by Mr. Frederick in the article hereinbefore referred to. Many are cited and discussed in Re A. E. Fountain, Inc. (C. C. A.) 282 F. 816. It is unnecessary to make a general survey of them here, for the Court of Appeals for this circuit has had the immediate question before it, and has held that the legal title, though it is but a security title, is in the person who delivers the possession of the goods and takes the trust receipt, and not in him who receives the possession and makes the trust receipt. Century Throwing Co. v. Muller, 197 F. 252, 116 C. C. A. 614; Assets Realization Co. v. Sovereign Bank of Canada, 210 F. 156, 126 C. C. A. 662, affirming the views of Judge McPherson in Re Dunlap Carpet Co. (D. C.) 206 F. 726; Roth v. Smith, 215 F. 82, 131 C. C. A. 390, affirming the views of Judge McPherson in Re Killian Mfg. Co. (D. C.) 209 F. 498.

[1] While the trust receipts involved in those cases were given in a tripartite transaction, and while the transaction in the case at bar was not a tripartite one, no bank or other independent financing institution being concerned in it, yet, so long as the title to the property is, by transfer from a third person, in the person accepting the trust receipt, it seems to me that, upon the question of the whereabouts of the legal title as between the person delivering possession of the property under the terms of a trust receipt and the person so taking possession, it is wholly immaterial whether the person who delivers possession is or is not a banker, and likewise immaterial whether a third person is or is not concerned in the immediate transaction. It may be that such differences in fact are not without results upon the quality of the legal title, but with respect to the situs of that title I think the trust receipt in the one case means and has the same effect as in the other. Consequently, the cases cited must be accepted as controlling upon the question of whether the title to the skins is in the petitioner or in the trustee in bankruptcy.

[2] The trustee suggests, however, that the delivery of the skins under the memorandum of December 5 constituted a sale; that the subsequent delivery of the trust receipt by the bankrupt makes the transaction one in which the petitioner's title, if any, was derived solely through the trust receipt from the bankrupt, the person responsible for the payment of the draft which the property was intended to secure; that consequently the rights of the petitioner are at most only those of a chattel mortgagee; that, as he was not put in possession of the property, and as the trust receipt lacks the affidavit which is essential to the validity of a chattel mortgage under the Delaware statute (Rev. Code, § 2855), the petitioner has neither title nor lien, and must stand as a general creditor only, as did the petitioner in Re A. E. Fountain, Inc. (C. C. A.) 282 F. 816. The fault in this reasoning, as I see it, lies in the unsoundness of the primary contention. The contract of December 5, if a contract of sale, was not a contract of absolute sale. It provided for the optional requirement on the part of the petitioner of a trust receipt. The trust receipt was in fact required and given in conformity with the terms of the memorandum of December 5. The bill of lading was not made to the bankrupt. Hence, as I view the matter, the memorandum of December 5 did not divest the title of the petitioner to the skins. Though, as has been said by Mr. Frederick and by some of the courts, there is a certain analogy be-

2 F.(2d)—48

tween a trust receipt and a chattel mortgage, yet, as the title to the property is in the petitioner and was not in the maker of the trust receipt, that instrument, as used in the case at bar, is not a chattel mortgage within the accepted meaning of that term.

But, even though the title remained in the petitioner, is it ineffective as against the trustee in bankruptcy by reason of the provisions of the Bankruptcy Act or by reason of the doctrine of ostensible ownership? As there are no questions of fraud or preference in the case, the title and rights of the trustee in and to the skins are those specified in section 70 (Comp. St. § 9654), and in the amendment of 1910 embodied in section 47a (2) of the Bankruptcy Act (Comp. St. § 9631). The former section, so far as here pertinent, reads thus:

"The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt * * * to all * * * (5) property which prior to the filing of the petition he [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him."

[3, 4] The trust receipt and the decisions in this circuit bearing upon trust receipts are conclusive in their effect that the skins could not have been lawfully transferred prior to its adjudication in bankruptcy by the bankrupt. As said in Watertown S. E. Co. v. Davis, 5 Houst. (Del.) 192, 209, " * * * there is no principle of law better settled than that he who has no title in fact cannot convey any and none can be asserted for him. This is indisputable." But could the skins have been levied on and sold under judicial process against the bankrupt? This, too, must be determined by the local law. In re Berry (D. C.) 247 F. 700; In re Waite-Robbins Motor Co. (D. C.) 192 F. 47. There is no conflict in the Delaware decisions upon this point. The cases are a unit in holding that property in possession of a judgment debtor, but which is, in fact, owned by another, may not be levied upon and sold under judicial process against the judgment debtor. Sharp v. Arthurs, 1 Houst. 353; Watertown S. E. Co. v. Davis, 5 Houst. 192, 209; Taylor v. Plunkett, 4 Pennewill (20 Del.) 467, 469, 56 A. 384; Flint Wagon Works v. Maloney, 3 Boyce, 137, 81 A. 502; McClemy v. Brown, 6 Boyce (Del.) 253, 99 A. 48. It is true that there are two statutory exceptions to this rule. One, section 2623 of the Revised Code, applies to goods that are sold and not actually delivered to the vendee or that afterwards return to and continue in the possession of the seller. This exception is obviously not here applicable. The other, 30 Delaware Laws, c. 192, pertains to property in the possession of the creditor under an unrecorded conditional sales contract. But under that statute the failure to record the contract may be taken advantage of only by a "purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them. * * *" Section 5.

As under section 70 of the Bankruptcy Act the trustee stands in the shoes of the bankrupt (Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577; York Manufacturing Co. v. Cassell, 201 U. S. 344, 25 S. Ct. 481, 50 L. Ed. 782), it is manifest that that section lends no aid to the trustee in rendering ineffective against him the title of the petitioner to the skins.

[5] The amendment of 1910, however, was enacted to change the then existing law as construed by the two cases last cited and to improve the position of the general creditors of the bankrupt by enlarging the rights of the trustee. Hayes v. Gibson (C. C. A.) 279 F. 812, 22 A. L. R. 1372. The pertinent portion of that amendment, embodied in section 47a(2) of the Bankruptcy Act, is: " * * * Such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon. * * *"

The amendment does not, however, confer upon the trustee rights, remedies, and powers over property which, though coming into the custody of the bankruptcy court, was in the possession of the bankrupt under such circumstances and conditions that prior to the bankruptcy it could not have been impressed with a lien by a judgment or other creditor of the bankrupt. Brown Bros. Co. v. Smith Bros. Co. (D. C.) 231 F. 475. Consequently, the extent of the trustee's rights under the amendment of 1910, section 47a (2), as under section 70 of the Bankruptcy Act, must be determined by the local law. In re Floyd-Scott Co. (D. C.) 224 F. 987; Hoyt v. Zibell, 259 F. 186, 170 C. C. A. 254; In re Bettman-Johnson Co., 250 F. 657, 163 C. C. A. 3; Bryant v. Swofford Bros., 214 U. S. 279, 29 S. Ct. 614, 53 L. Ed. 997. That law, as evidenced by the Delaware cases hereinbefore cited, does not recognize the doctrine of ostensible ownership, and it denies to a judgment creditor the right in the

absence of fraud, which is not here asserted, to fasten a lien upon any property in the possession of the judgment debtor that is not in fact owned by him, unless such right is conferred by statute. The only Delaware statute of that character here pertinent is the Uniform Conditional Sales Act, c. 192, vol. 30, Laws of Delaware. It follows that the title of the petitioner to the skins must prevail against the trustee, unless the title is defeated by that statute.

How stands the title of the petitioner under the Conditional Sales Act? The sections of that act relevant to the immediate inquiry are:

"Section 1. *(Definition of Terms.)* In this Act 'Conditional Sale' means (1) any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency; or (2) any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract. * * *

"Section 4. *(Conditional Sales Valid Except as Otherwise Provided.)* Every provision in a conditional sale reserving property in the seller after possession of the goods is delivered to the buyer, shall be valid as to all persons, except as hereinafter otherwise provided.

"Section 5. *(Conditional Sales Void as to Certain Persons.)* Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale.

"Section 6. *(Place of Filing.)* The conditional sale contract or copy shall be filed in the office of the recorder of deeds in the county in which the goods are first kept for use by the buyer after the sale. It shall not be necessary to the validity of such conditional sale contract, or in order to entitle it to be filed, that it be acknowledged or attested. * * *

"Section 22. *(Deficiency on Resale.)* If the proceeds of the resale are not sufficient to defray the expenses thereof, and also the expenses of retaking, keeping and storing the goods and the balance due upon the purchase price, the seller may recover the deficiency from the buyer, or from any one who has succeeded to the obligations of the buyer."

The questions arising with respect to this statute are, Was the transaction between Schmoll Fils & Co. a conditional sale, and, if so, was the recording of the trust certificate, alone, a compliance with the terms of the act, or was it essential to file for record the memorandum of December 5 as well? In many of the cases in which a trust receipt has been held by a banker in a tripartite transaction the courts, where possible, have avoided a denomination in common-law terms of the precise relation existing between the banker and the importer. In Century Throwing Co. v. Muller, 197 F. 252, 116 C. C. A. 614, Judge Gray seemed inclined to the view that it was in the nature of bailor and bailee. In Emerson–Brantingham Implement Co. v. Lawson (D. C.) 237 F. 877, it was held that contracts which reserved title absolutely in the vendor are not conditional sales within the meaning of the Iowa recording acts, but are bailments; but a contract of sale, contemplating resale by the buyer, is a conditional sale and not a bailment. In other cases the courts have held or indicated the transaction to be one of conditional sale. New Haven Wire Cases, 57 Conn. 352, 18 A. 266, 5 L. R. A. 300; Mershon v. Moors, 76 Wis. 502, 45 N. W. 95; Moors v. Drury, 186 Mass. 424, 71 N. E. 810. These and other cases were reviewed in Charavay & Bodvin v. York Silk Mfg. Co. (C. C.) 170 F. 819. There it was expressly held to be not a conditional sale. The Court of Appeals for the Sixth Circuit, in Re Bettman-Johnson Co., 250 F. 657, 163 C. C. A. 3, held it to be within the scope of the Ohio statute which was in the nature of a broad Conditional Sales Act. No case in which the Uniform Conditional Sales Act has been involved has been cited by counsel or found by me. Mr. Frederick, however, after quoting the first section of that act, but having reference to a trust receipt used in a tripartite transaction in which one of the parties is a person or institution financing the transaction, says:

"From what has already been said about the trust receipt in relation to conditional sales, it is clear that it does not come within the first part of this definition. As to the second part, the same is equally clear if it

be noted that the payment must be 'as compensation' for the goods. This statute, therefore, has no bearing on trust receipts except as it may be adopted in a jurisdiction like Connecticut which has judicially defined the trust receipt as a conditional sale."

I have difficulty in following Mr. Frederick as to the first definition of a conditional sale in section 1 of the act. It is true that in the usual trust receipt there is no statement in terms that the transaction is one for the sale of goods and that upon the payment of the price therefor or upon the performance of some other condition the property in the goods is to vest in the maker of the trust receipt, but I think its obvious meaning, whatever it may be in a tripartite transaction, is, when used as here, that the property in the goods is to vest in the maker of the trust receipt when all the indebtedness secured by the trust receipt is paid to the holder thereof. This view is supported by the fact that in the trust receipt given by the bankrupt there is no requirement, express or implied, that the goods when manufactured were to be returned in the usual course of trade and business to the petitioner. But the trust receipt in the case at bar is not the only document by which the nature of the transaction is evidenced. The trust receipt must be read in connection with the memorandum of December 5 of which it is a part. That memorandum discloses that the transaction was a sale. The trust receipt, when read in connection therewith, discloses that the sale was not an absolute one but was upon condition.

[6] I think the transaction in question comes within the first definition of section 1 of the Delaware statute, and is a conditional sale. See In re Cullen (D. C.) 282 F. 902. Moreover, the grounds for the decision in the Charavay Case seem to be nullified in this state by section 22 of the Conditional Sales Act. Again, sections 5 and 6 of the act require that to give validity to the contract as against creditors who without notice acquire by attachment or levy a lien upon the goods "the conditional sale contract or copy shall be filed" in the designated public office. The memorandum or agreement of December 5 is a material part of the conditional sale contract. It was not filed. In re Bazemore (D. C.) 189 F. 236, it was held, as stated in the syllabus, that "failure to record a material part of a conditional sale contract prevented the record of the part from operating as constructive notice to creditors." See In re A. E. Savage Baking Co. (D. C.) 259 F. 976. The filing of the trust receipt alone was not, I think, a compliance with the Delaware statute.

Consequently, the failure to file the conditional sale contract enables the trustee successfully to assert the invalidity of that contract as to him if he is one of the class of persons mentioned in section 6 of the act. To be of such a class he must have acquired, or be in the position of one who has acquired, by attachment or levy a lien upon the goods of the petitioner without notice of the petitioner's rights. If the trustee has that status, it is solely by virtue of section 47a(2) as amended in 1910. While by that section the trustee is to "be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon," it is not therein expressly provided that he is to be such lienholder "without notice." Yet, as the amendment had for its purpose the placing of trustees in bankruptcy upon such plane as would enable them to take advantage of the nonrecording of chattel mortgages and conditional sales contracts, and as a lienholder with notice has not in equity rights superior to such mortgagee or seller, it seems obvious that the words "without notice" are embodied by necessary implication in the amendment of 1910. In re Bazemore (D. C.) 189 F. 236; 24 A. & E. (2d Ed.) 131. It follows that, if the rights of the petitioner are only those of a seller under an unrecorded conditional sales contract, he is without right to the skins or insurance money as against the trustee.

But are the rights of the petitioner confined to the rights of a conditional vendor under an unrecorded conditional sales contract? Before the petition in bankruptcy was filed, a receiver of and for the bankrupt, a Delaware corporation, was appointed by the chancellor of the state of Delaware pursuant to the authority conferred upon him by section 3883 of the Revised Code. The receiver took possession of the skins and of the insurance money paid to the bankrupt for the skins of the petitioner that were destroyed by fire. The petitioner, as it was authorized to do by its contract, made a demand upon the receiver for the skins and the insurance money. The demand was not complied with. Thereupon a petition was presented to the chancellor by Schmoll Fils & Co. praying that the receiver be directed to deliver to it the skins and pay to it the insurance money. Hearing was had. Soon thereafter, and while the matter was held under advisement by the chancellor, the petition in bankruptcy was filed and an adjudication had. Proceedings in the court of

chancery were thereupon stayed, and no opinion was filed or order made by the chancellor upon the petition filed in that court. Subsequently the skins and insurance money were turned over by the receiver in chancery to the trustee in bankruptcy. New petitions were filed in the bankruptcy cause. A receiver appointed by the chancellor under section 3883 of the Delaware Code stands in the shoes of the corporation for which he was appointed. He has no rights greater or other than those which the corporation had. Delaware Trust Co. v. Elder, 12 Del. Ch. 263, 112 A. 370; Bradford v. United Leather Co., 11 Del. Ch. 76, 97 A. 620; Id., 11 Del. Ch. 110, 97 A. 622; In re Frederica Water Co., 10 Del. Ch. 362, 93 A. 376.

[7] A receiver under the Delaware statute is in the same legal position as was the trustee in bankruptcy before the amendment of 1910, and so in the same legal position as was the trustee in York Mfg. Co. v. Cassell, 201 U. S. 344, 26 S. Ct. 481, 50 L. Ed. 782. Had the petitioner actually obtained possession of its property before the petition in bankruptcy was filed the trustee would have been without rights therein or thereto, notwithstanding the nonrecording of the contract, for the rights of a trustee under section 47a(2) of the Bankruptcy Act do not antedate the filing of the petition in bankruptcy (Bailey v. Baker Ice Mach. Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275); and an unfiled conditional sale contract is valid as to all persons until the moment a purchaser from or creditor of the buyer without notice purchases the goods or acquires a lien upon them. Sections 4 and 5 of the Delaware statute. As now appears, the demand made upon the receiver was good. The petitioner did not stop with a demand upon the receiver. It asked, by petition, a court of equity which had possession of its, the petitioner's, property to surrender that possession to it. It brought the petition on for a hearing. Hearing was had. Nothing remained that could be done by the petitioner to obtain possession of its property. I cannot conceive that those acts of the petitioner were converted into a nullity by the filing of the petition in bankruptcy while the chancellor was properly holding the matter under advisement. On the contrary, I think it must be assumed by this court sitting in bankruptcy and governed by equitable principles that, at least after the hearing upon the petition in chancery was had, that court held the possession, not for the Ford-Rennie Company, but for the person entitled thereto. As no reason now appears why the property should not and would not have been returned to the petitioner by the chancellor had not bankruptcy intervened, I think that in obedience to the maxim that equity considers as done that which ought to be done, and the principle that no person shall be prejudiced by the necessary delay of a court not attributable to the laches of the parties (Mitchell v. Overman, 103 U. S. 62, 64, 65, 26 L. Ed. 369), it must be held that at the time of the filing of the petition in bankruptcy Schmoll Fils & Co. had not only the title to the property in question but the possession thereof as well. An actual return of the property to the petitioner by the receiver, even if made within four months prior to the filing of the petition in bankruptcy, would not have created under the existing facts a voidable preference. Martin v. Commercial National Bank, 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441; In re Terrell, 246 F. 743, 159 C. C. A. 45. Hence, I am of the opinion that the property sought by the petitioner is not property to which the trustee in bankruptcy has any claim.

The insurance money, so far as it can be identified, is, I think, in the same legal position as the skins, which can be identified.

There were a number of similar transactions between Schmoll Fils & Co. and the bankrupt. While they differed somewhat in the matter of details, they do not differ in legal effect from the transaction described.

I think the rights of Doherr, Grimm & Co. call for no separate analysis and review. The documents and papers evidencing its transactions were not identical in phraseology with those used by Schmoll Fils & Co., but I think the legal effect thereof is the same. It did not record its trust receipts or other papers, but, in view of my conclusion that the filing by Schmoll Fils & Co. of its trust receipt was without legal effect, this is not a distinguishing fact. Like Schmoll Fils & Co., it made a demand upon the chancery receiver for a return of its property. Upon the refusal of the receiver to comply with that demand it, too, filed a petition praying the chancellor to direct the receiver to make return, and prosecuted its petition to final hearing.

The prayers of both petitions must be granted.